[3 NYS3d 352]

In the Matter of RAFAEL A. ESCALANTE (Admitted as RAFAEL ANTONIO ESCALANTE), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 26, 2015

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Kevin P. Culley* of counsel), for petitioner.

*Rafael A. Escalante,* respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Rafael A. Escalante was admitted to the practice of law in the State of New York by the First Judicial Department on October 29, 2001, under the name Rafael Antonio Escalante. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (Committee) now seeks an order pursuant to Judiciary Law § 90 (2) and Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (d) confirming the determinations of the Referee and Hearing Panel and disbarring respondent. The Committee served respondent with its petition at his address in Puerto Rico, a P.O. Box, by first-class mail and certified mail, return receipt requested, but he has not submitted a response.

In 2013, the Committee charged respondent with violating Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) and Rules of Professional Conduct (RPC) (22 NYCRR 1200.0) rule 8.4 (c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and RPC rule 1.3 (b) (neglect); DR 7-101 (a) (2) (22 NYCRR 1200.32 [a] [2]) and RPC rule 1.3 (c) (intentional failure to carry out a contract of employment entered into with a client for professional services); RPC rule 1.15 (a) (misappropriation of third-party funds), (e) (requiring that all escrow account withdrawals be to named payees) and (i) (failure to produce required escrow account records for a disciplinary authority); RPC rule 1.16 (e) (failure to promptly refund an unearned fee); RPC rule 8.4 (d) (conduct prejudicial to the administration of justice); and, based on the foregoing misconduct, DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and RPC rule 8.4 (h) (any other conduct that adversely reflects on fitness as a lawyer). The Committee brought a total of 29 charges concerning respondent's misuse of his escrow account, including intentional conversion of third-party funds and failure to maintain proper escrow records, as well as neglect of cases and refusal to return unearned legal fees. In his answer, respondent, pro se, neither specifically admitted nor denied the factual allegations or charges. By way of mitigation, respondent averred that he has ceased practicing law and has relocated to Puerto Rico to be a full-time caretaker to his terminally ill mother.

On September 12, 2013, a hearing on the charges was held before Referee Michael C. Marcus, Esq. Although advised of the hearing date, respondent sent two emails in which he stated that his mother's condition required him to remain with her in Puerto Rico and that he would not attend the hearing. The hearing proceeded without respondent. The Committee presented documentary evidence and testimony, including deposition testimony obtained from respondent. Despite being advised after the hearing that he could submit evidence of mitigation, respondent made no submissions. By a report dated November 7, 2013, the Referee sustained all 29 charges and recommended that respondent be disbarred. The Referee's report was affirmed by the Hearing Panel on July 21, 2014.

We now grant the petition confirming the findings of fact and conclusions of law made by the Referee and affirmed by the Hearing Panel, as well as the recommended sanction of disbarring respondent.

In September and December 2011, the Committee received complaints from parties of a transaction for whom respondent was retained to serve as an escrow agent, alleging that he had misappropriated funds. Specifically, in April 2011, KC LLC (KC) engaged RI Bank Group (RI) to procure a standby letter of credit. Respondent was retained to act as escrow agent and hold $200,000 pending receipt of the letter of credit, for which service he was to receive a $2,000 fee. KC wired $175,000 to respondent's IOLA account at JPMorgan Chase. After a dispute, KC canceled the transaction and demanded respondent refund the $175,000. On April 27, 2011, respondent returned only $100,000 via wire transfer from an escrow account that he maintained at Citibank. KC's principal demanded that respondent return the remaining $75,000, which respondent failed to do. In December 2011, KC's principal filed a complaint with the Committee. In his belated February 2012 answer to the complaint, respondent averred that, inter alia, the parties resolved their dispute and that KC's principal had instructed him to release the remaining $73,000 to RI, which he claimed he did.

Back in September 2011, RI's principal filed a complaint with the Committee alleging that, inter alia, respondent had only released $45,000 of the $73,000 due RI. In a belated answer received on February 16, 2012, respondent averred that, inter alia, he had disbursed $45,000 of the $73,000 in accordance with the RI principal's instructions, but that the RI

principal had failed to provide respondent's bank with sufficient, original documentation to permit it to wire the remaining $28,000. Respondent stated further that the "$28,000 still remains in my escrow account until this matter is resolved."

Between February 2012 and January 2013, the Committee attempted to obtain the relevant escrow account records via written requests and two judicial subpoenas which directed respondent to appear for an examination under oath. Respondent did not produce the specified records, nor did he appear on March 13, 2012 for his deposition. Instead, the Committee obtained respondent's escrow and business account records directly from JPMorgan Chase and Citibank. Those records showed that respondent mishandled and converted/ misappropriated funds. Specifically, respondent's JPMorgan Chase IOLA account records showed that: (1) the beginning balance in his account on April 1, 2011 was $30; (2) on April 7 and 12, 2011, KC wired a total of $175,000 into the account; (3) between April 7 and 14, 2011, respondent transferred a total of $5,030 to a checking and a savings account, causing the account balance to fall to $170,000; and (4) on April 14, 2011, respondent withdrew the $170,000 balance and deposited it into his Citibank escrow account.

The Citibank escrow records showed that: (1) the beginning balance was $0 and after the $170,000 was deposited into the account on April 14, on April 18, 2011, respondent withdrew $3,700 in cash, and transferred $5,000 to his Citibank business account; and (2) on April 21, respondent withdrew $5,000 in cash and made a $300 international "Wire out." When respondent refunded KC $100,000 on April 27, 2011, the Citibank escrow balance was $56,000, not the $75,000 he was required to maintain. Additionally, from May 9 to June 23, 2011, respondent made nine withdrawals to himself in varying amounts, totaling $10,000.

On June 23, 2011, the date the KC principal instructed respondent to release the remaining $75,000 escrow to RI, the Citibank escrow balance had fallen to $46,000, $29,000 below the amount respondent was required to hold for the parties. On June 27, 2011, respondent transferred an additional $1,000 to his Citibank business checking account and, on June 29, 2011, he wired $45,000 pursuant to the RI principal's instructions, causing the escrow balance to zero out. In addition to the above improper withdrawals, from April 18, 2011 to February 11, 2013 respondent made approximately 100 withdrawals from

his Citibank escrow account which caused the account balance to fall below $28,000. These withdrawals included: 54 transfers to his Citibank business account totaling approximately $110,000; seven cash withdrawals totaling $19,402.16; and approximately 32 ATM withdrawals totaling $7,445. As of December 4, 2012, the Citibank escrow account balance was only 84 cents.

The Referee sustained charges 1 through 8, finding that inter alia, respondent intentionally converted and misappropriated third-party funds in violation of RPC rules 8.4 (c) and 1.15 (a). The Referee further found that respondent made false statements in his answers to both KC's and RI's complaints in violation of RPC rule 8.4 (c); made unidentified escrow account withdrawals in violation of RPC rule 1.15 (e); failed to submit timely answers to both parties' complaints; and failed to produce the special account records subpoenaed by the Committee in violation of RPC rules 1.15 (i) and 8.4 (d).

Further evidence adduced at the hearing before the Referee revealed that respondent had neglected a number of his cases and misled clients. One client testified that she retained respondent in March 2010 to represent her in a Chapter 13 bankruptcy matter for which she paid him $1,750 toward a total fee of $3,000. However, respondent failed to file her bankruptcy petition. In his belated answer to the client's complaint, respondent averred that he was unable to proceed with her bankruptcy matter because she purportedly failed to provide respondent with necessary documents. In addition, on July 21, 2010, just after the client filed her complaint of July 12, respondent tendered a $1,750 check to her as a refund which was dishonored due to insufficient funds. Thereafter, the client commenced a fee arbitration proceeding and in February 2011, during the arbitration hearing, respondent tendered a cashier's check for $1,750 to her and the matter was settled.

The Referee sustained charges 9 through 15, finding that respondent neglected the client's bankruptcy matter in violation of RPC rule 1.3 (b); intentionally failed to carry out a contract of employment entered into with a client for professional services in violation of RPC rule 1.3 (c); made false statements in his answer to the client's complaint and testified falsely at his October 20, 2011 deposition as to the reasons he failed to file the client's bankruptcy petition and the steps he took to refund her legal fee in violation of RPC rule 8.4 (c); failed to promptly refund an unearned legal fee in violation of RPC rule 1.16 (e);

and failed to submit a timely answer to the client's complaint and provide the Committee with requested documents in violation of RPC rule 8.4 (d).

Another client retained respondent in December 2009 to represent her after she was named as a defendant in a partnership dissolution action. The client paid respondent a fee of $3,000 for his services. The plaintiff in the action moved by order to show cause for, inter alia, the appointment of a receiver. Respondent purportedly submitted papers in response, but failed to appear in court on the return date. In August 2010, in response to the client's inquiries, respondent, without checking, informed his client that the plaintiff's motion had not been decided. In January 2011, at the client's insistence, respondent checked with the court and learned that the plaintiff's motion had been denied with leave to renew in June 2010. In March 2011, the client filed a complaint with the Committee in which she alleged that, inter alia, respondent had neglected her matter by failing to keep her apprised of the status of her case and that he failed to return important original documents to her. In his late answer, respondent averred that, inter alia, the client wanted him to mislead the court about certain partnership debt. At his October 20, 2011 deposition, respondent falsely testified that the court had appointed a receiver in his client's case. The Referee sustained charges 16 through 19, finding that respondent neglected his client's matter in violation of RPC rule 1.3 (b); falsely testified at his October 20, 2011 deposition that a receiver had been appointed in violation of RPC rule 8.4 (c); failed to promptly refund an unearned fee in violation of 1.16 (e); and failed to submit a timely answer to his client's complaint and to provide the Committee with requested documents in violation of RPC rule 8.4 (d).

A third client testified that he retained respondent in January 2010 to handle his personal bankruptcy matter and paid respondent $1,000 toward a total agreed-upon fee of $1,200. Respondent advised his client that he would not file his bankruptcy petition until the remaining $200 was paid. The client repeatedly tried to contact respondent so that he could make arrangements to pay him the remaining $200, but respondent did not respond to any of his messages. In February 2011, the client filed a complaint with the Committee alleging that respondent had failed to communicate with him and had neglected his case. In addition, the client requested that respondent refund his $1,000, but he never did. In his belated answer

to his client's complaint and at his October 20, 2011 deposition, respondent claimed that the client refused to pay him the $200 balance of his fee until respondent filed his bankruptcy petition. To date, respondent has not refunded the $1,000 his client paid him. The Referee sustained charges 20 through 23, finding that respondent neglected the client's matter in violation of RPC rule 1.3 (b); made false statements in his answer and testified falsely at his October 20, 2011 deposition regarding the reason he did not file the client's bankruptcy petition in violation of RPC rule 8.4 (c); failed to promptly refund an unearned legal fee in violation of RPC rule 1.16 (e); and failed to submit a timely answer to the client's complaint in violation of RPC rule 8.4 (d).

A fourth client retained respondent in August 2008 to handle her personal bankruptcy matter for which she paid him a fee of $1,200. Over a two-year period, respondent failed to file the bankruptcy petition, but nonetheless informed the client that her matter was active and progressing. In July 2010, the client discharged respondent and retained new counsel who filed a Chapter 7 bankruptcy petition on her behalf. In August 2010, respondent tendered the client a $1,200 refund check which was dishonored due to insufficient funds. In September 2010, the client filed a complaint with the Committee alleging that, inter alia, respondent had neglected her bankruptcy matter; made false representations regarding the status of her case; and failed to refund the $1,200 she paid him. In his answer, respondent claimed that he had not prepared the bankruptcy petition because it was purportedly agreed that he would first complete her former husband's bankruptcy matter since it involved a joint debt, a home mortgage; the client purportedly failed to provide respondent with necessary documents in a timely manner; and, after the client's former husband's bankruptcy matter was completed in July 2010, she discharged him and purportedly demanded a refund in excess of what she had paid. In September 2010, after the client had filed her complaint with the Committee, respondent refunded her $1,200 legal fee.

The Referee sustained charges 24 through 29, finding that respondent neglected the client's bankruptcy matter in violation of DR 6-101 (a) (3) and RPC rule 1.3 (b); intentionally failed to carry out a contract of employment violation of DR 7-101 (a) (2) and RPC rule 1.3 (c); made misrepresentations to the client regarding the status of her bankruptcy case in viola-

tion of DR 1-102 (a) (4) and RPC rule 8.4 (c); made false statements in his answer to the client's complaint and testified falsely at his October 20, 2011 deposition as to the reasons he failed to file the bankruptcy petition in violation of DR 1-102 (a) (4) and RPC rule 8.4 (c); and failed to submit a timely answer to the complaint in violation of RPC rule 8.4 (d). The Referee further found that based on respondent's overall misconduct he violated DR 1-102 (a) (7) and RPC rule 8.4 (h).

We conclude that the findings made by the Referee sustaining all 29 charges against respondent are fully supported by the record and that the sanction of disbarment is appropriate. Respondent's misappropriation of escrow funds constitutes a sufficient independent ground for disbarment since "[a]bsent extremely unusual mitigating circumstances," intentional conversion of funds belonging to a client or third party mandates disbarment (*Matter of Lubell*, 190 AD2d 479, 481 [1st Dept 1993]). Moreover, respondent's additional misconduct, which includes neglect of four legal matters, failure to promptly refund unearned legal fees, false statements to and false testimony before the Committee, and his disciplinary history (two prior admonitions for, inter alia, neglect and failure to refund an unearned legal fee), further support the sanction of disbarment (*e.g. Matter of Taylor*, 113 AD3d 56 [1st Dept 2013]; *Matter of Holubar*, 84 AD3d 100 [1st Dept 2011]).

Accordingly, the Committee's petition should be granted, the findings of fact and conclusions of law of the Referee and Hearing Panel confirmed, respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

MAZZARELLI, J.P., DEGRASSE, MANZANET-DANIELS, FEINMAN and GISCHE, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.