[17 NYS3d 111]

In the Matter of RICHARD B. LIVINGSTON (Admitted as RICHARD BRUCE LIVINGSTON), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 29, 2015

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kathy W. Parrino* of counsel), for petitioner.

*Richard B. Livingston*, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Richard B. Livingston was admitted to the practice of law in the State of New York by the First Judicial Department on April 17, 1972, under the name Richard Bruce Livingston. Respondent was previously admitted to practice in the State of New Jersey in 1971, where he practiced law.

The Departmental Disciplinary Committee (Committee) seeks an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.3 disbarring respondent from the practice of law based upon similar discipline imposed upon him by the State of New Jersey, or, in the alternative, sanctioning respondent as this Court deems appropriate.

Prompted by an overdraft in his attorney trust account from October 2010 until March 2011, the New Jersey Office of Attorney Ethics (OAE) audited respondent's trust account. The audit revealed serious recordkeeping deficiencies including respondent's failure to maintain separate ledgers for all client funds, and cash withdrawals from the trust account for personal purposes. As a result of the audit, OAE charged respondent with violating New Jersey Rules of Professional Conduct (RPC) rules 1.15 (a) (knowing misappropriation of and failure to safeguard client funds) and (d) (failure to maintain

required account records), 8.1 (b) (failure to respond to the OAE's lawful demands for trust account records) and 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation). In his answer, respondent admitted some of the facts alleged by the OAE but denied the charges. Prior to a hearing, respondent, represented by counsel, entered into a stipulation with the OAE in which he admitted that he violated RPC rules 1.15 (d) and 8.1 (b).

A hearing on the charges was held before a Special Ethics Master. The testimonial and documentary evidence submitted during the hearing established the following facts. In or about 2008, respondent represented an entity named Rivermount Developers LLC in the sale of three residential properties. A dispute arose regarding one of the properties and litigation ensued. By certifications dated June 23, 2009 and April 29, 2010, respondent represented to the court that he was holding the sum of $297,846.48 in his trust account, pending resolution of the litigation. However, at the time respondent made these certifications, the balance of his trust account was actually only $38,663.05. Respondent admitted that between June 2009 and July 2010, he removed the Rivermount funds from his trust account and used them for his own benefit. Respondent explained that he transferred the funds into, inter alia, a personal joint checking account he maintained with his wife, that was used for the payment of household and personal expenses, which included his monthly mortgage payment because his business "was not doing so well at the time." In July 2010, pursuant to the court's order, respondent released the Rivermount funds to the designated claimant. By then, however, respondent had replenished his trust account with personal funds.

The OAE auditor discovered additional misappropriations by respondent. For instance, on May 13, 2010, respondent deposited a $34,000 contract deposit from a client named Meegoda which should have remained intact until June 23, 2010. The total amount which respondent should have been holding for both Rivermount and Meegoda was $331,846.48. However, between May 13 and June 23, 2010, the account balance repeatedly fell below this amount. As of June 1, 2010, the account balance was only $63,709.56. Meegoda told the OAE that respondent was not authorized to use his deposit for any purpose other than his real estate transaction.

In addition, on June 3, 2010, respondent deposited a $25,000 contract deposit in his trust account on behalf of his clients the

Pajkas, which monies should have remained intact until at least June 8, 2010. Taking into account the Rivermount funds and Meegoda's and the Pajkas' contract deposits, respondent's trust account should have held at least $356,846.48 through June 8, 2010. However, as of June 3, 2010, the account balance was only $258,655.30, thus, leaving a shortfall of $98,191.18. Mrs. Pajka told the OAE that neither she, nor her husband, had authorized respondent to use the contract deposit for any purpose other than their real estate transaction.

Respondent explained that even though he used the Rivermount funds for his personal purposes, he always had sufficient personal funds to cover the full amount; and he believed that "escrow" could be broadly defined as monies he had control over, including funds in his personal accounts. Respondent further explained that he removed the Rivermount funds because he feared that Sovereign Bank, where he maintained his trust account, might fail and the monies might be lost because the amount on deposit exceeded the amount insured by the Federal Deposit Insurance Corporation (FDIC).

Respondent's insolvency concerns notwithstanding, he was unable to explain why he removed the Rivermount funds in varying amounts as opposed to one lump sum. Further, while respondent continually referred to an insurable limit of $100,000 by the FDIC, in fact, his trust account would have been insured up to $250,000 per client by the FDIC, and respondent admitted that there were times when his trust account balance exceeded $2 million. Respondent was unable to explain the fact that he transferred the Rivermount funds to other accounts he maintained at Sovereign Bank.

The Special Ethics Master found that respondent had failed to maintain required trust account records (RPC rule 1.15 [d]), failed to respond to the OAE's lawful demands for specific account records (RPC rule 8.1 [b]), knowingly misappropriated client funds (RPC rule 1.15 [a]), and made misrepresentations to the court (RPC rule 8.4 [c]). Again, respondent stipulated that he violated RPC rules 1.15 (d) and 8.1 (b). The Special Master recommended that respondent be disbarred.

Following a de novo review of the record, the Disciplinary Review Board (DRB), confirmed the Special Master's liability findings insofar as respondent failed to maintain required account records, failed to produce requested records for the OAE, and knowingly misappropriated client funds belonging to Rivermount, Meegoda, and the Pajkas. As to sanction, the DRB

confirmed the Special Master's recommendation of disbarment. By order filed June 5, 2014, the Supreme Court of New Jersey confirmed the DRB's findings and disbarred respondent (*Matter of Livingston*, 217 NJ 591, 91 A3d 635 [2014]).

The Committee now seeks the same relief that the Supreme Court of New Jersey imposed based upon the doctrine of reciprocal discipline (22 NYCRR 603.3). This Court's reciprocal discipline rule provides that upon a showing of the imposition of a disciplinary sanction in a foreign jurisdiction, the only defenses that may be raised are: (1) a lack of notice and an opportunity to be heard; (2) an infirmity of proof presented in the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in a foreign jurisdiction does not constitute professional misconduct in this state (22 NYCRR 603.3 [c]; *Matter of Ligos*, 75 AD3d 78 [1st Dept 2010]).

Here, there is no evidence that respondent failed to receive sufficient notice of the New Jersey charges or an opportunity to answer them. On the contrary, he was represented by counsel throughout the New Jersey proceedings, he testified at the hearing before the Special Master, and he appeared for oral argument before the DRB. It is further submitted that, contrary to his current contention before us, respondent was permitted to present a full defense. Specifically, respondent himself testified that his invasions of client funds were motivated by concerns about his bank's solvency. The fact that the Special Master did not allow him to present hearsay evidence, and ultimately found him not credible, does not prove that respondent was deprived of a meaningful full defense. In addition, there is no infirmity of proof since the Special Master's, the DRB's, and the New Jersey Supreme Court's findings of misconduct are fully supported by the record, and they are essentially conceded by respondent.

Finally, the actions for which respondent was disciplined in New Jersey would constitute misconduct in New York. Specifically, the New Jersey Supreme Court found that respondent violated RPC rules 1.15 (a) (failure to safeguard and knowing misappropriation of escrow funds) and (d) (record keeping violations) and 8.1 (b) (failure to cooperate with disciplinary authorities), which correspond to several provisions of the New York Rules of Professional Conduct (22 NYCRR 1200.0), namely, rules 1.15 (a), (d), (i) and (j) and 8.4 (c) and (d).

Thus, the only issue left for this Court to decide is the appropriate sanction to be imposed. As a general rule in recipro-

cal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (*see Matter of Jaffe*, 78 AD3d 152, 158 [1st Dept 2010]; *Matter of Jarblum*, 51 AD3d 68 [1st Dept 2008]).

This Court has consistently disbarred attorneys who intentionally convert client or third-party funds, and, thus, the sanction imposed in New Jersey is consistent with this Court's precedent (*see e.g. Matter of Escalante*, 127 AD3d 37 [1st Dept 2015] [disbarred for, inter alia, intentional conversion of third-party funds and failure to produce account records subpoenaed by the Committee]; *Matter of Kennedy*, 99 AD3d 75 [1st Dept 2012] [disbarred for, inter alia, intentional conversion of third-party funds and failure to cooperate with Committee investigation]; *Matter of Johnson*, 94 AD3d 157 [1st Dept 2012] [disbarred based on disbarment in Utah for intentional misappropriation of client funds]; *Matter of Hersh*, 91 AD3d 144 [1st Dept 2011] [disbarred based on disbarment on consent in New Jersey for knowing misappropriation of client funds]; *Matter of Ligos*, 75 AD3d at 78 [same]).

Accordingly, the Committee's petition for an order pursuant to reciprocal discipline (22 NYCRR 603.3) should be granted, and respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.

TOM, J.P., RENWICK, MOSKOWITZ, MANZANET-DANIELS and FEINMAN, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.