Matter of Blatt (2022 NY Slip Op 02627)

Matter of Blatt

2022 NY Slip Op 02627

Decided on April 21, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 21, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,J.P.,
David Friedman
Anil C. Singh
Peter H. Moulton
John R. Higgitt, JJ.

Motion No. 2021-04316 Case No. 2021-04703 

[*1]In the Matter of Stuart R. Blatt (Admitted as Stuart Richard Blatt), an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Stuart R. Blatt, (OCA Atty. Reg. No. 1766476), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Fourth Judicial Department on June 26, 1980.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Peter M. Hertzog, of counsel), for petitioner.
Respondent pro se.

Per Curiam 

Respondent Stuart R. Blatt was admitted to practice law in the State of New York by the Fourth Judicial Department on June 26, 1980 under the name Stuart Richard Blatt. This Court retains jurisdiction over him because respondent was employed by a law firm with an office address within the First Judicial Department when this matter was transferred from the Fourth Judicial Department to the First Judicial Department (Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
In November 2017, Bar Counsel for the Attorney Grievance Commission of Maryland filed a petition for disciplinary or remedial action charging respondent with professional misconduct that included alleged intentional misappropriation of client funds. The charges focused on, among other things, respondent's firm's misappropriation of client funds, and in its representation of four clients.
In August 2018, a circuit court judge held a hearing after which she sustained all of the charges before her. Respondent, who was represented by counsel, filed exceptions to the hearing judge's misconduct findings with the Maryland Court of Appeals.
By order entered May 22, 2019, following oral argument, the Court of Appeals reviewed the hearing judge's conclusions of law de novo, considered respondent's exceptions, affirmed the findings in full and disbarred respondent for, among other things, intentional misappropriation of client funds (see Attorney Grievance Commn. of Maryland v Blatt, 463 Md 679, 208 A3d 820 [2019]).
Respondent was a law firm principal overseeing the firm's debt collection and creditors' rights practice. The firm closed its offices in February 2015 after facing financial difficulties and becoming unable to pay its bills.
The firm maintained several accounts as repositories for collected debts, including a General Collections Account into which funds collected on behalf of the firm's smaller clients were deposited (other accounts were specifically designated for larger clients). The bank at which these accounts were maintained had also extended a loan to the firm, which was repaid by debits charged to the firm's operating account. Although the General Collections Account received and held client funds, it was not established as an attorney trust (i.e., escrow) account and was therefore subject to being debited by the bank for repayment of the loan. Respondent and the firm's other principal had signature authority with respect to the firm's bank accounts, as did respondent's wife, who was the firm's office manager.
The firm's financial manager testified that within one to two days after deposits of collected funds, the firm's corresponding legal fee would be withdrawn and the remainder of the collected funds would then be remitted to the designated clients on a monthly basis along with a detailed accounting. The firm's financial manager also testified that [*2]on various occasions she was directed by respondent and others to "borrow" money from the accounts holding the collection clients' funds on behalf of the firm when it needed money for payroll or its other bills. As a result, the General Collections Account sometimes had insufficient funds to pay the monthly remittances to all of the firm's smaller collection clients. The financial manager received instructions from the office manager, who had consulted with respondent and the other principal, as to which clients would be paid and which would not.
When the firm began experiencing financial distress in 2014, it opened an account it referred to as "General Collections II Account." While the account was labeled as an escrow account, in practice it functioned as an operating account into which client funds were periodically transferred from the General Collections Account. At the end of May 2015, more than $50,000 remained in the General Collections Account which, according to the financial manager, consisted entirely of client funds, because the legal fees related to the corresponding collection matters had already been removed from the account as per the above-described procedure. In June 2015, respondent's wife electronically transferred $24,500 from the General Collections Account to the General Collections II Account. At approximately the same time, respondent issued a check drawn on the General Collections II Account made payable to "Stuart Blatt and/or Blatt Law," which monies were deposited into an account  not designated as an attorney escrow account  titled "Blatt Law Group, LLC" at a separate bank.
Respondent moved the funds out of the first bank and into the second bank to avoid the possibility that the first bank would claim them to offset the firm's loan debt. While he testified before the hearing court that the financial manager told him that the entire $24,500 related to the firm's attorney's fees, the hearing judge did not find respondent credible in light of the financial manager's prior testimony that attorney's fees were withdrawn from collected debt funds within a day or so of each deposit into the General Collections Account.
Shortly after respondent's transfer of funds from the first bank to the second bank, the firm defaulted on its loan. In September 2015, the lender bank closed various accounts of the firm, including the General Collections Account, General Collections II Account, and the firm's IOLTA account, and applied the funds remaining therein against the firm's liability for its loan from the bank. Respondent did not take any action to recover any client funds that may have been held in those accounts.
In addition, respondent obtained a judgment on behalf of client 1 and garnished the judgment debtor's wages. While respondent initially forwarded collected monies to the client, all communication and monies from respondent ceased after October 2014. When the judgment expired, respondent failed to renew it, yet continued [*3]to collect garnishments and place them in the firm's General Collections Account. When the judgment debtor moved to vacate the garnishments, respondent failed to respond to the motion or inform the client of the motion or the expired judgment. Respondent further failed to inform the client that the firm was closing or that the firm to which he intended to transfer the file had terminated its relationship with respondent. Respondent further failed to provide the client with the file or an accounting.
In August 2014, client 2 retained the firm to collect from a judgment debtor. The firm collected garnished funds, placed them in the General Collections Account, failed to remit the funds to the client, failed to communicate with the client, and failed to respond to her numerous requests for her file and for an accounting. In April 2015, a check from the General Collections Account was sent to the client, without any accompanying explanation. Respondent and the firm failed to inform the client that the firm was closing.
The firm had a longstanding relationship representing a credit union in numerous collection matters, normally remitting collected amounts to this client. After January 2015, the firm continued to collect debts owed to the client, depositing them into the General Collections Account, but failed to send the client any further disbursements or accountings, failed to inform the client that the firm was closing, and failed to provide accurate contact information for respondent, thus impairing the client's ability to determine the viability of the approximately 200 open matters still assigned to the firm at the time the firm closed. As a result, the client was forced to charge off claims it had referred to the firm.
An insurance subrogation firm referred four collection matters to respondent and the firm between December 2013 and August 2014, and remitted court costs for the contemplated lawsuits, which funds were deposited into the firm's General Collections Account. (Respondent supervised the attorneys who litigated these matters and signed all complaints.) In three of the four matters, the firm failed to file actions, which permitted the statutes of limitations to lapse. In the fourth matter, the firm filed, but failed to serve, a complaint. In addition, respondent failed to respond to the client's repeated requests for updates. When respondent did speak to a representative of the client in April 2015, he said that he could not find most of the files and, in any event, was not in charge of the matters. Respondent failed to inform the client that the firm had closed and that he had attempted to transfer the inventory to a new firm, and failed to provide an accounting, update the client, or refund the court costs.
Before the hearing court, respondent asserted that his involvement in the practice was limited due to various health conditions. The hearing judge did not find this claim to be credible, given the testimonial evidence received [*4]from multiple witnesses at the hearing, and did not discuss any mitigating factor in reaching her conclusions of law and fact other than the absence of a prior disciplinary history. The hearing court found aggravating factors in that respondent had failed to make restitution or accept responsibility for the client funds deposited in the General Collections Account that should have been paid to the clients, and failed to account for and restore to unpaid clients the monies transferred from the firm's bank account to respondent's bank account. The hearing court further found that respondent's conduct reflected a pattern of violations over an extended period of time.
The Maryland Court of Appeals determined that respondent's testimony on the issue of the impact of his health conditions failed to demonstrate that they were the "root cause" of his professional misconduct such that they constituted "compelling extenuating circumstances" sufficient to warrant any sanction other than disbarment in the case of misconduct involving dishonesty and intentional misappropriation (Blatt, 463 Md at 709, 208 A3d at 838). The Maryland Court of Appeals found an additional aggravating factor in that, as a member of the bar for over 40 years, respondent had substantial experience in the practice of law.
We note that respondent failed to notify the Attorney Grievance Committee (AGC) of the relevant Judicial Department of the discipline imposed by the Maryland Court of Appeals, as required by 22 NYCRR 1240.13(d).
The AGC now seeks an order, pursuant to 22 NYCRR 1240.13 and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, and directing him to demonstrate why this Court should not impose discipline in New York based on his discipline in Maryland or, in the alternative, sanctioning him as this Court deems appropriate. Respondent has not submitted opposition to the motion.
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13(b), respondent may raise the following defenses: (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State. Respondent has not asserted any defenses.
Moreover, none of the enumerated defenses to reciprocal discipline applies herein. Respondent received adequate due process in the Maryland proceeding in that he received notice of the charges against him and, represented by counsel, he participated in the Maryland proceeding by appearing in person, offering documents in evidence, and unsuccessfully challenging the hearing judge's misconduct findings by submitting exceptions. With respect to the quality of the proof establishing the misconduct, the hearing judge's and the Maryland Court of Appeal's misconduct findings [*5]are amply supported by the record. Lastly, respondent's misconduct in Maryland would also constitute misconduct if committed in New York (see Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.1[a]; 1.3[a]; 1.4[a]; 1.4[b]; 1.15[a]; 1.15[c]; 1.16[e]; 5.1[a]; 5.1[b]; 5.3[a]; 5.3[b]; 8.4[a]; 8.4[c]; 8.4[d]).
As to the appropriate sanction, "significant weight should be given to the sanction imposed by the jurisdiction where the misconduct occurred because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct" (Matter of Blumenthal, 165 AD3d 85, 86 [1st Dept 2018]; see Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]), and only in rare instances will this Court depart from its general rule (Matter of McHallam, 160 AD3d 89, 92 [1st Dept 2018]; Matter of Lowell, 14 AD3d 41, 48 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]).
Disbarment, as requested by the AGC, is the appropriate sanction because it is commensurate with the discipline imposed in Maryland and is in general accord with precedent involving comparable misconduct absent extremely unusual mitigating circumstances, of which there is no evidence here (see e.g. Matter of Carlos, 192 AD3d 170, 172 [1st Dept 2021]; Matter of Arnold, 180 AD3d 72 [1st Dept 2019]; Matter of Blumenthal, 165 AD3d at 85; Matter of Livingston, 133 AD3d 1 [1st Dept 2015]; see also Matter of Karambelas, 203 AD3d 75 [1st Dept 2022]).
Accordingly, the AGC's motion should be granted and respondent is disbarred from the practice of law and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York.
All concur.
It is Ordered that the Attorney Grievance Committee's motion for reciprocal discipline pursuant to 22 NYCRR 1240.13(a) and (b), predicated upon similar discipline imposed by the Court of Appeals of Maryland, is granted, and respondent Stuart R. Blatt, admitted as Stuart Richard Blatt, is disbarred and his name stricken from the roll of attorneys in the State of New York, effective immediately, and until further order of this Court, and
It is further Ordered that pursuant to Judiciary Law § 90, respondent Stuart R. Blatt, admitted as Stuart Richard Blatt, is (1) commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another, or from holding himself out in any way as an attorney or counselor-at-law; (2) forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; and (3) forbidden to give another an opinion as to the law or its application or advice in relation thereto, and
It is further Ordered that respondent Stuart R. Blatt, admitted as Stuart Richard Blatt, is directed to fully comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), and
It is further Ordered that if respondent has been issued a secure pass [*6]by the Office of Court Administration, it shall be returned forthwith.
Entered: April 21, 2022