[769 NYS2d 243]

In the Matter of WILLIAM J. McCANN (Admitted as WILLIAM JOHN McCANN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 16, 2003

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill (Vitaly Lipkansky* of counsel), for petitioner.
*Mendel White* for respondent.

6

Per Curiam.

Respondent William J. McCann was admitted to the practice of law in the State of New York as William John McCann by the Second Judicial Department on June 25, 1975 and, at all times relevant herein, has maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges, and a subsequent amended notice and statement of charges, on June 11, 2002 and September 24, 2002, respectively, alleging that he had violated Code of Professional Responsibility DR 1-102 (a) (4) and (5), and DR 9-102 (a), (b) (1); (d) (1) and (e) (22 NYCRR 1200.3, 1200.46), by intentionally converting client funds, commingling his own funds with escrow funds, concealing and shielding personal funds from a judgment creditor by placing them with another individual and by depositing them in his attorney trust account, using his trust account as a personal/business account, withdrawing trust funds payable to cash, and failing to maintain contemporaneous records for the trust account.

Respondent, in his answers to the charges and amended charges, admitted most of the factual allegations, but denied that his conduct with respect to shielding his funds was dishonest or prejudicial to the administration of justice. Respondent also denied that he was guilty of misappropriation or conversion, and prior to the Referee's hearing, entered into a stipulation in which he admitted liability as to all of the counts except those alleging that he converted and misappropriated escrow funds.

The Referee, in a report and recommendation dated December 30, 2002, found that in February 1993, a judgment was entered against respondent in favor of West 71st Street Associates (Associates) for approximately $65,000. In December 1996, Associates moved to garnish respondent's personal bank account due to his failure to make payment on the debt and as a result, respondent began giving his legal earnings to an associate in his law firm, who then provided the funds to him on an as-needed basis. Respondent, after all of his associates had left the firm, began concealing his personal funds by depositing them into his attorney trust account. At an earlier deposition, respondent described his practice of using his attorney trust account as "a shield" against the debtor.

The Referee concluded that although respondent knew his concealment of funds was wrong at the time, he did so in order

to prevent Associates from lawfully executing on its judgment, and to pressure Associates to renegotiate the amount owed. Respondent thereafter continued to use his trust account as his personal bank account until July 2002, which was after disciplinary charges were filed, despite the fact that Associates renegotiated respondent's debt two years earlier. The Referee also noted that respondent failed to maintain a ledger for his trust account and made 39 withdrawals to "cash" between November 1, 1999 and September 30, 2000.

The Referee sustained counts one through five of the charges, which involved the above factual allegations and which were admitted to by respondent, and found, inter alia, that respondent violated DR 1-102 (a) (4) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Respondent, in counts six through eight, is alleged to have commingled the personal money he had deposited in his attorney trust account with escrow funds, and then converted those funds for his own use. Respondent, as attorney for the sellers in a real estate transaction, received a $17,800 down payment from the buyer, which was to be held in escrow. Although he did not have the permission of the buyer to use the funds, he testified he had the permission of the sellers, whereas the Referee noted that there "was no written agreement evidencing this permission."

In mitigation, respondent testified that he thought his actions were a better alternative than filing for personal bankruptcy and wiping out "legitimate" debts, and that his accounts receivable were always in excess of the escrow amount. As a result, respondent averred that at no time were any client or third-party funds in jeopardy. In aggravation, the Committee submitted a letter of admonition, dated August 3, 1993, that respondent was issued for neglect of a client matter (DR 6-101 [a] [3]), and for failing to cooperate with the Committee in its investigation (DR 1-102 [a] [5]).

The Referee, in conclusion, sustained all eight charges and found that respondent: repeatedly concealed his assets for the purpose of avoiding a judgment against him; used escrow funds to pay ordinary and personal expenses; failed to show any remorse, pointedly noting that respondent's only apparent regret was getting caught; and has not been forthright in his testimony, which he changed on occasion to suit the particular circumstances before him. The Referee concluded that respondent presented no evidence to demonstrate extenuating circum-

stances and, agreeing with the Committee, recommended disbarment.

The Hearing Panel heard arguments on February 11, 2003, and by a report dated March 14, 2003, confirmed the Referee's findings of fact and conclusions of law, but modified the recommended sanction to a four-year suspension effective from the date of the report. The Hearing Panel noted that while respondent's conversion of funds was serious, they also noted that it involved one client and was "singular." The Panel further opined that although respondent made approximately 27 separate withdrawals from the escrowed funds over a two-month period, and used those funds for his personal expenses, the acts were limited to one account, and "[h]ad other accounts been used disbarment would indeed be the appropriate discipline."

The Committee, by petition dated May 14, 2003, now seeks an order confirming the Hearing Panel's determination insofar as it confirmed the Referee's findings of fact and conclusions of law, and imposing such discipline as this Court deems just and proper.

Initially, we find that in light of the stipulated facts and the evidence adduced at the hearings, the Hearing Panel's determination confirming the findings of fact and conclusions of law of the Referee, in which all eight counts were sustained, should be confirmed.

With regard to the appropriate sanction, we have consistently held that in the absence of unusual mitigating circumstances, the conversion of clients' funds constitutes serious professional misconduct which warrants the sanction of disbarment (*Matter of Harley*, 298 AD2d 49, 51 [2002]; *Matter of Britton*, 232 AD2d 17, 20 [1997]). "This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds" (*Matter of Britton, supra* at 20, quoting *Matter of Marks*, 72 AD2d 399, 401 [1980]). This Court has also held that the ultimate repayment of the misappropriated funds does not vitiate the wrongful conduct (*Matter of Ampel*, 208 AD2d 57, 61 [1995]; *Matter of Landau*, 180 AD2d 257, 258 [1992]).

In this matter, we reject the Hearing Panel's conclusion that respondent's misconduct warranted a four-year suspension, rather than disbarment, because it was limited to the misuse of only one account (*see Matter of Britton, supra*) and, in any event, note that respondent's conversion included 27 separate and un-

authorized withdrawals beginning just three days after the date of the real estate contract. Respondent also improperly used his escrow account to conceal personal funds from legitimate creditors, and his claims of lack of venal intent with regard to the foregoing misconduct were rejected by both the Referee and the Hearing Panel. Lastly, we perceive of no mitigating factors, substantial or otherwise, which would warrant deviation from the sanction of disbarment.

Accordingly, the Committee's petition should be granted to the extent of confirming the findings of fact and conclusions of law of the Hearing Panel and the Referee. The Hearing Panel's recommendation that this Court impose a four-year suspension should be disaffirmed, and respondent should be disbarred.

NARDELLI, J.P., ROSENBERGER, WILLIAMS, MARLOW and GONZALEZ, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.