[817 NYS2d 251]

In the Matter of LESLIE S. KOHN (Admitted as LESLIE STEVEN KOHN), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 15, 2006

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Kevin P. Culley* of counsel), for petitioner.

No appearance for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Leslie S. Kohn was admitted to the practice of law in the State of New York by the First Judicial Department on February 27, 1978 and, at all times relevant to this proceeding, has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.4 (d), confirming the Hearing Panel's determination which confirmed the Referee's findings of fact and conclusions of law, and disbarring respondent as recommended by both the Referee and the Hearing Panel. This Court, by order entered May 10, 2005, immediately suspended respondent from the practice of law, until further order of this Court, based upon his substantial admissions under oath that he intentionally withdrew client funds from his IOLA account without authorization, and misappropriated funds for his own personal use (*Matter of Kohn,* 18 AD3d 96 [2005]). Respondent has failed to submit a response to the within petition.

The Committee, on May 4, 2005, served respondent with a notice and statement of amended charges alleging 17 violations of the Lawyer's Code of Professional Responsibility.

The charges allege that respondent: while representing sellers in three separate real estate matters, converted and misappropriated the third-party buyers' contract deposits he held in escrow on their behalf, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and DR 9-102 (a) (22 NYCRR 1200.3, 1200.46 [counts 1-3, 9-13]); failed to promptly return a contract deposit to a third party when requested in one of the transactions and, in another, failed to return deposited funds to his client which she was entitled to receive after closing, in violation of DR 9-102 (c) (4) (counts 4, 14); provided false explanations in his answer to the Committee as to why he could

not return the third-party funds promptly, without also informing the Committee of his inability to return the funds due to his multiple conversions and failure to keep the funds intact, in violation of DR 1-102 (a) (4) (count 7) and (5) (count 8); failed to maintain required bookkeeping records, in violation of DR 9-102 (d) (1) and (2) (counts 5-6, 15-16); and, by all of the foregoing, engaged in conduct that adversely reflected on his fitness as a lawyer, in violation of DR 1-102 (a) (7) (count 17).

Respondent submitted an answer to the amended charges and on May 16, 2005, respondent, pro se, entered into a stipulation with the Committee whereby he admitted to nearly all of the factual allegations except those pertaining to counts 7 and 8, which charges alleged that respondent's innocent explanations for his delay in refunding deposits were false. The Referee, after conducting a hearing on the disputed charges, sustained all of the charges in a report dated August 11, 2005, and recommended respondent be disbarred. The Referee, in reaching his determination, considered: respondent's prior admonition issued in September 2002 for neglect and failure to carry out a contract of employment arising out of his failure to appeal a Family Court custody determination; that respondent in this matter had engaged in a pattern of misappropriations and conversions over the course of several months; and that he initially attempted to mislead the Committee regarding his misconduct, only admitting to it several months after the Committee's initial inquiries and when confronted with his bank records.

Respondent, in mitigation, testified, inter alia, that in January 2005, he was diagnosed with adult attention deficit disorder which had, at the time, prevented him from performing to his fullest potential as a practitioner. The Referee, however, noted that despite respondent's alleged psychiatric condition, which was not supported by expert testimony or medical records, respondent still managed to attain high academic achievement, having graduated from Bronx Science High School, the University of Chicago, and Cornell Law School. The Referee also noted that respondent did not proffer any evidence of good character, reputation or community service.

The Referee, in conclusion, found that although respondent expressed a willingness to replace all the funds taken, he had not done so. Moreover, even after a complaint was filed against respondent for conversion, he continued to convert funds from a different IOLA account than the one involved in the initial

complaint. Based upon his pattern of intentional conversion of client funds, repeated over the course of several months, and his intentional failure to address the shortfalls of his IOLA account in an attempt to mislead the Committee, the Referee recommended disbarment.

A Hearing Panel held oral argument on October 18, 2005 and, although respondent did not appear, he left a telephone message with the Committee indicating his awareness of the hearing, that his decision not to attend was because he recently started working as a teacher and that he wanted to move on with his life, and he did not believe his appearance would change the outcome of the hearing. The Panel thereafter found counts 9 and 10 to be duplicative but, in all other respects, endorsed the recommendation of the Referee and recommended respondent be disbarred.

As we recently stated, this Court considers it well settled, "virtually without exception and absent extreme mitigating circumstances, that attorneys such as respondent who have intentionally converted client funds have committed serious professional [mis]conduct which warrants the sanction of disbarment" (*Matter of Schmell*, 27 AD3d 24, 27 [2006]; *see also Matter of Blumstein*, 22 AD3d 163 [2005]), regardless of the intent to restore, or the actual restoration of funds (*Matter of Schmell*, 27 AD3d at 27; *Matter of Nitti*, 268 AD2d 41 [2000]). This result is mandated not only because of the obvious reflection on the attorney's credibility, but, more importantly, by the duty to protect the public and to justify the public's confidence in lawyers as custodians of clients' funds (*Matter of McCann*, 3 AD3d 5, 8 [2003]; *Matter of Britton*, 232 AD2d 17, 20 [1997]).

In the matter before us, respondent repeatedly and intentionally converted substantial client and third-party funds, initially attempted to mislead the Committee in its investigation of his handling of those funds and his failure to promptly return them, and continued to convert funds from one of his IOLA accounts after he became aware that the Committee was investigating irregularities from his other IOLA account. Moreover, respondent's submissions in mitigation were, at best, de minimis.

Accordingly, the Committee's petition should be granted, the findings of fact and conclusions of law of the Hearing Panel confirmed, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York

and his name stricken from the roll of attorneys, effective immediately.

NARDELLI, J.P., WILLIAMS, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.