[927 NYS2d 333]

In the Matter of EUGENIE H. MOODY (Admitted as EUGENIE HART), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 21, 2011

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Joseph J. Hester* of counsel), for petitioner.

*Steven A. Mundie*, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Eugenie H. Moody was admitted to the practice of law in the State of New York by the Second Judicial Department on June 30, 1993, under the name Eugenie Hart. At all times relevant herein, respondent has maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (Committee) now petitions for an order, pursuant to 22 NYCRR 603.4 (d), confirming the findings of fact and conclusions of law set forth in the Referee's report and the Hearing Panel's determination regarding liability, and confirming the Hearing Panel's recommendation that respondent be suspended from the practice of law for six months. Respondent concurs with the findings of fact and conclusions of law set forth in the Referee's report and the Hearing Panel's determination, but seeks the imposition of a three-month suspension as recommended by the Referee.

On August 12, 2009, the Committee served respondent with a notice and statement of charges containing 13 charges pertaining to respondent's alleged neglect of the affairs of 10 clients in immigration matters, as well as her failure to cooperate with the Committee's investigation and to return certain property or files to clients. On November 23, 2009, the Committee served respondent with a notice and statement of supplemental charges containing five additional charges pertaining to her neglect of three additional clients.

Respondent represented immigration clients, primarily in asylum matters, conducting business from her office at 1170 Broadway in Manhattan. The majority of respondent's clients were from the French-speaking countries of West Africa, and because few of them spoke any English, she communicated with them through interpreters.

Respondent testified that her practice began to fail due to sabotage by disloyal employees who began to steer respondent's business to another immigration attorney. Ultimately, due to the fact that respondent had few new clients in 2004, she was forced to close her office in August 2005. Thereafter, she met clients in restaurants and coffee shops and used the office of another attorney, located at 292 Fifth Avenue, for the purpose of interviewing and meeting with clients.

A primary issue at the hearing concerned the steps respondent took to notify her clients about the closing of her office

and how they could contact her. Respondent testified that clients with pending cases were informed in person that she would be closing her office and provided with phone numbers and the address of a nearby Fifth Avenue office she sometimes used. Respondent claimed to have apprised her clients of the office closure, but was unable at the hearing to produce the letters she allegedly sent to them informing of the closure.

Shortly thereafter, respondent moved to Teaneck, New Jersey. Respondent testified that she kept the files of the clients with pending cases accessible at her mother's Teaneck home and put the older cases into storage. However, respondent did not produce certain client files pursuant to the Committee's investigation and ultimately testified that she believed she may have accidentally placed a few client files with pending matters into inaccessible storage.

Respondent last registered with the Office of Court Administration on March 7, 2007 for the biennial period 2005-2006. Respondent had changed her home address to the Bellerose address where she then resided, but made no change to her office address. Samuel Younger, an employee of the Office of Court Administration (OCA), testified that attorneys are required to notify OCA of a change of business address within 30 days of such change. Respondent wrote to OCA on December 28, 2009 to notify them that her office address had changed from 1170 Broadway to a 291 Broadway address.

The Committee withdrew two of the initial 13 charges against respondent (charge 8 and charge 14). The Referee dismissed five additional charges (charges 2, 3, 4, 5 and 12), and sustained the remaining charges, finding that respondent had failed to inform clients regarding the dismissal of their claims within the 30-day time period within which to take an appeal to the Second Circuit; had failed to timely file a motion to reopen an application for asylum; had failed to notify clients regarding court dates; and had failed to cooperate with the Committee.

The Referee found respondent to be "well-intentioned," although her misconduct was "serious . . . unacceptable," and recommended a three-month suspension. The Hearing Panel affirmed the Referee's liability findings, but found a six-month suspension to be appropriate in light of the "the serious nature of Respondent's abandonment of her clients."

While the Hearing Panel properly held that respondent engaged in a "pattern of neglect" accompanied by additional misconduct in failing to cooperate with the Committee's

investigation with respect to two complaints, the Hearing Panel erroneously observed that respondent was found liable for other misconduct, *"e.g.,* failure to provide clients property to which they were entitled in violation of DR 9-102 (C) (4)." The Referee explicitly found that charge 12 was not proved by the Committee and indeed, in setting forth the Referee's disposition on the charges, the Hearing Panel indicated that charge 12 was "[d]enied." Accordingly, the motion to confirm the Hearing Panel's determination should be denied to the extent it indicates that respondent is liable for failing to turn over the property of one of her clients in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]).

As to the Referee's findings that respondent neglected seven client matters, the evidence presented establishes respondent's liability under DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) . Although respondent did not completely abandon her law practice without notifying clients, conduct which would warrant a lengthier suspension (*see Matter of Kuhnreich*, 21 AD3d 1 [2005] [two-year suspension]), respondent's neglect of asylum matters over a span of four years and involving seven different clients certainly qualifies as a "pattern of neglect" (*Matter of Cofino*, 211 AD2d 298, 309 [1995] [neglect of eight legal matters over a three-year period considered a pattern of misconduct warranting a one-year suspension]).

Furthermore, the evidence supported the Referee's finding that respondent committed additional misconduct prejudicial to the administration of justice, in violation of DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), because she inexcusably failed to timely answer two clients' complaints and did not provide the Committee with client files she claimed she would supply. This conduct may be attributed to respondent's failure to properly maintain access to client files after closing her office since there is no indication that she intentionally hindered the Committee's investigation. However, particularly in view of the fact that respondent also reneged on her promise to the Referee that she would produce important documents, including the letter she allegedly wrote to her clients about closing her office, respondent's nonchalance with respect to the disciplinary proceedings cannot be disregarded.

We find that respondent's conduct merits a six-month suspension from the practice of law. Respondent's neglect of her asylum clients cannot be attributed to any physical or psychological infirmity, she did not fully cooperate with Committee's investiga-

tion and there are facts present, including her delinquency in registering with OCA, indicating that a six-month period of suspension is warranted (*compare Matter of Salomon*, 78 AD3d 115 [2010] [finding public censure warranted for respondent who neglected asylum matters in light of respondent's reputation in the legal community, his high rate of success, his client's satisfaction with his services, his cooperation with disciplinary proceedings and his claim that he had made restitution to the affected clients]).

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, as modified herein, and respondent should be suspended from the practice of law for a period of six months.

GONZALEZ, P.J., SAXE, CATTERSON, ACOSTA and MANZANET-DANIELS, JJ., concur.

Respondent suspended as an attorney and counselor-at-law in the State of New York for a period of six months, effective the date hereof.