[28 NYS3d 56]

In the Matter of Olukayode L. Babalola (Admitted as Olukayode Lawrence Babalola), a Suspended Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, March 24, 2016

### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.
*Olukayode L. Babalola*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent, Olukayode L. Babalola, was admitted to the practice of law in the State of New York by the First Judicial Department on January 10, 1995, under the name Olukayode Lawrence Babalola.[1] At all times relevant herein, respondent maintained an office for the practice of law within the First Department.

By order and decision entered July 31, 2014, this Court suspended respondent, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (e) (1) (iii), based upon uncontested evidence that he repeatedly misappropriated client funds (121 AD3d 181 [1st Dept 2014]).

In 2014, the Departmental Disciplinary Committee (DDC) brought a total of 10 charges against respondent alleging that he intentionally converted and misappropriated client funds (Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]; DR 9-102 [a] [22 NYCRR 1200.46 (a)]) (charges 1 and 2); failed to promptly remit client funds (DR 9-102 [c] [4] [22 NYCRR 1200.46 (c) (4)]; Rules of Professional Conduct [RPC] [22 NYCRR 1200.0] rule 1.15 [c] [4]) (charge 3); failed to render an appropriate account to his clients of funds held on their behalf (DR 9-102 [c] [3] [22 NYCRR 1200.46 (c) (3)]; RPC rule 1.15 [c] [3]) (charge 5); failed to maintain required records (DR 9-102 [d], [j] [22 NYCRR 1200.46 (d), (j)]; RPC rule 1.15 [d] [1], [2], [3]; [j]) (charge 6); neglected an estate matter (DR 6-101 [a] [3] [22 NYCRR 1200.30 (a) (3)]; RPC rule 1.3 [b]) (charge 7); intentionally failed to carry out a contract of employment (DR 7-101 [a] [2] [22 NYCRR 1200.32 (a) (2)]; RPC

---

1. Respondent appears pro se.

rule 1.3 [c]) (charge 8); intentionally prejudiced and damaged his clients during the course of his representation (DR 7-101 [a] [3] [22 NYCRR 1200.32 (a) (3)]; RPC rule 1.1 [c] [2]) (charge 9); testified falsely at a DDC deposition (RPC rule 8.4 [c]) (charge 4); and, based on his overall misconduct, engaged in conduct that adversely reflects on his fitness as a lawyer (DR 1-102 [a] [7] [22 NYCRR 1200.3 (a) (7)]; RPC rule 8.4 [h]) (charge 10).

On September 15, 2014, a hearing convened before a Referee who, by report dated February 2, 2015, sustained seven charges (charges 1 through 6 and 10), and deemed charge 9 withdrawn. Following a sanction hearing, by report dated April 29, 2015, the Referee recommended that respondent be disbarred, effective nunc pro tunc to July 31, 2014 (the date of his interim suspension).[2] In a report dated July 7, 2015, the Hearing Panel confirmed the Referee's report in full, and recommended that respondent be disbarred.

Now, by notice of petition dated October 19, 2015, the Committee moves, pursuant to Judiciary Law § 90 (2) and 22 NYCRR 603.4 (d) and 605.15 (e) (2), for an order confirming the Hearing Panel's liability findings and sanction recommendation, and disbarring respondent. Respondent has submitted a cross petition, dated October 30, 2015, requesting that we confirm the Referee's and Hearing Panel's liability findings that charges 7, 8 and 9 were not sustained; disaffirm the Referee's and Hearing Panel's findings sustaining charges 1, 3, 4 and 10; and disaffirm the recommended sanction of disbarment; and, instead, impose a two-year suspension, effective nunc pro tunc to the date of his interim suspension.

For the reasons set forth below, we now grant the petition to confirm the Hearing Panel's liability findings sustaining charges 1 through 6 and 10, as well as the recommended sanction of disbarment, effective nunc pro tunc to the date of his interim suspension. We grant the cross petition only to the extent of confirming the Hearing Panel's findings that charge 7 and 8 were not sustained, charge 9 having been withdrawn.

---

2. The charges covered conduct that occurred under both the former Disciplinary Rules and the current Rules of Professional Conduct. Although the Referee only referenced the former Disciplinary Rules in sustaining charges 3, 5 and 6, the current Rules of Professional Conduct applicable to these charges are substantially identical to the former Disciplinary Rules, and thus the conduct occurring under both constitutes a violation sufficient to sustain the charges.

In August 2005, family members retained respondent to settle their mother's estate. Although respondent was going to initiate probate proceedings in Surrogate's Court, he did not do so. Respondent's services also included processing claims under two life insurance policies and obtaining death benefits. The family members agreed that the life insurance and death benefit proceeds would be held in respondent's IOLA account until they decided what to do with the funds. After a portion of the funds were initially distributed to the family members for living expenses and to respondent for his legal fee, the balance of $207,176 was deposited into respondent's IOLA account.

Between August and December 2006, respondent and the family members discussed investment possibilities for the remaining funds in the IOLA account and respondent eventually suggested that they loan the funds to real estate contractors he personally knew for the purchase and renovation of properties. In December 2006, respondent and the family members entered into an agreement, whereby respondent was authorized to withdraw $130,000 from the IOLA account and deposit it in a corporate bank account solely owned and controlled by respondent. The agreement further provided that respondent was permitted to pursue other types of investments which were mutually agreed upon. Respondent did not advise the family members to consult with independent counsel prior or subsequent to signing the agreement. While the agreement stated that respondent was supposed to be holding $130,000 in escrow, at the time the of its execution, only $73,798.99 remained in his IOLA account.

Respondent never transferred any of the funds from his IOLA account to the corporate account. The Referee was not persuaded that respondent used the missing family members' funds to make bonafide loans because, based on respondent's IOLA account records, the $55,000 he claimed to have lent third parties appeared to have been disbursed for unrelated matters; the terms of the purported loans were inconsistent with an October 2009 payment agreement he reached with the family members (after he had been unwilling or unable to return their money); and the maturity dates of the purported loans passed without respondent satisfying his obligations to the family members.

In his post-hearing submissions, respondent also conceded that he did not have a personal checking account from June through December 2006, during which time he used the IOLA

account to write checks. Respondent's IOLA account records showed that, between June 2006 and December 2007, he issued 37 checks payable to himself totaling $92,750, and made nine payments to Sprint PCS, Verizon, and Long Island Power Authority totaling $5,934.75. The family members testified that these withdrawals were not authorized by them and were made without their knowledge. In August 2013, after charges were brought against respondent, he paid the family members $5,000 and, just prior to the 2014 disciplinary hearing, he paid the family members a total of $51,697.26, in full settlement of their claims against him.

There is ample evidence in the record to support the finding that respondent intentionally converted and misappropriated client funds in violation of DR 1-102 (a) (4) and DR 9-102 (a). We, therefore, confirm the liability findings on charges 1 and 2. We also find that respondent's failure to promptly remit the family members' funds to them when requested violated DR 9-102 (c) (4). We, therefore, confirm the liability finding on charge 3. Moreover, by failing to provide the family members with a proper accounting of the funds held on their behalf in his IOLA account, responded violated DR 9-102 (c) (3). We, therefore, confirm the liability finding on charge 5.

During respondent's June 10, 2013 examination under oath, the Committee requested that he produce specified account records which he is required to maintain. Respondent assured the Committee that he would produce the requested records at a later date, but he failed to do so. By failing to maintain required bookkeeping records, respondent violated DR 9-102 (d) and (j). We, therefore, confirm the liability finding on charge 6. We also confirm the liability finding on charge 4 based on respondent's false deposition testimony that he did not convert or misappropriate client funds and that he reduced installment payments to his clients because one of the family members purportedly had a drug problem when, in fact, respondent had withdrawn and depleted the funds for his own use in violation of RPC rule 8.4 (c). Based on his overall misconduct, we also find that respondent violated DR 1-102 (a) (7) and RPC rule 8.4 (h) (conduct that adversely reflecting on the fitness as a lawyer). We, therefore, confirm the liability finding on charge 10.

The Referee and Hearing Panel did not find that respondent neglected the settlement of the estate (charge 7), nor that respondent intentionally failed to carry out a contract of

employment (charge 8) in violation of DR 6-101 (a) (3), RPC rule 1.3 (b), DR 7-101 (a) (2) and RPC rule 1.3 (c) because there was a question as to whether the decedent's holographic will was valid in New York. We perceive no basis to disturb those determinations.

With respect to the proper sanction, both the Referee and Hearing Panel recommended that respondent be disbarred. We find that this sanction is appropriate since "[a]bsent extremely unusual mitigating circumstances," the intentional conversion and misappropriation of funds belonging to a client or third party warrants disbarment (*Matter of Escalante*, 127 AD3d 37, 44 [1st Dept 2015] [internal quotation marks omitted]; *Matter of Taylor*, 113 AD3d 56, 60 [1st Dept 2013]). This is not to say that respondent did not provide any mitigating circumstances. In mitigation, respondent states that he is in extremely poor health. In addition to suffering from diabetes, respondent had quintuple bypass surgery in December 2012 and underwent an emergency appendectomy in June 2014. He also has end-stage renal disease which resulted in partial amputation of his leg in October 2013 and requires up to four hours of dialysis three times per week. Moreover, respondent has no prior disciplinary history, he cooperated with the Committee, he presented evidence of a reputation for honesty, he was active in his community, and he made restitution in full to the family members.

Although we do not believe these mitigating circumstances are sufficient to avoid the sanction of disbarment, we do consider them in the context of whether disbarment should be ordered nunc pro tunc to the date of his interim suspension. We exercise our discretion to impose disbarment retroactively to the date of his interim suspension, which would make him eligible to apply for reinstatement at a sooner time (*Matter of Crescenzi*, 51 AD3d 230 [1st Dept 2008]; *Matter of Ampel*, 208 AD2d 57 [1st Dept 1995]).

Accordingly, the Committee's petition is granted, the findings of fact and conclusions of law of the Hearing Panel are confirmed, respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York effective nunc pro tunc to July 31, 2014, the date of his interim suspension. Respondent's cross petition is granted only to the extent of confirming the Hearing Panel's findings that charges 7 and 8 are not sustained, charge 9 having been withdrawn.

TOM, J.P., FRIEDMAN, SWEENY, RENWICK and GISCHE, JJ., concur.

Respondent is disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective nunc pro tunc to July 31, 2014 (121 AD3d 181 [1st Dept 2014]). Cross petition granted to the extent of confirming the Hearing Panel's determination of no liability as to charges 7 and 8, charge 9 having previously been withdrawn, and otherwise denied.