[29 NYS3d 369]

In the Matter of PATRICIA BALLNER (Admitted as PATRICIA ROSE BALLNER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 5, 2016

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Norma I. Lopez* of counsel), for petitioner.

*Scalise Hamilton & Sheridan LLP* (*Catherine Sheridan* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Patricia Ballner was admitted to the practice of law in the State of New York by the First Judicial Department on January 14, 1991 under the name Patricia Rose Ballner. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

The Department Disciplinary Committee (DDC) seeks an order, pursuant to Judiciary Law § 90 (2) and Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (1), confirming the Hearing Panel's findings that respondent engaged in professional misconduct and requesting that this Court impose a sanction it deems appropriate. Based upon the reasoning set forth below, we confirm the Hearing Panel's finding of no liability on charge 16, confirm the Hearing Panel's liability findings on charges 1, 3, 4, 5 in part, 6-15, 17 and 18, disaffirm the Hearing Panel's liability finding on charge 2, and disaffirm the recommended sanction of a four-year suspension, and instead, order that respondent be disbarred and her name stricken from the roll of attorneys and counselors-at-law in the State of New York.

In 2013, the DDC filed a total of 18 charges alleging that respondent neglected 10 different immigration matters in violation of Code of Professional Responsibility DR 6-101 (a) (3)* (22 NYCRR 1200.30 [a] [3]) (charges 1, 3, 6, 9, 11, 13-15, 16 and 17), and that she effectively withdrew from some of these matters, but failed to promptly refund unearned legal and filing fees in violation of DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3])

---

* The conduct occurred before April 1, 2009, warranting the application of the former rules under the Code of Professional Responsibility.

(charges 2, 5, 8, 10 and 12). She was also charged with altering money orders that her clients made payable to United States Citizenship and Immigration Service (USCIS) for filing fees, instead making them payable to herself, and then using the funds to pay for her office expenses in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charges 4 and 7). Based on her overall misconduct, she was charged with engaging in conduct that adversely reflected on her fitness as a lawyer in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (charge 18). The DDC sought to have her disbarred. Respondent admitted nine of the charges, contested the others and requested a penalty of public censure.

In a report, the Referee recommended that all charges, except charge 16, be sustained. He also recommended a sanction of a five-year suspension, as well as restitution and refund of all legal and/or filing fees paid by respondent's clients. Thereafter, the Hearing Panel confirmed the Referee's conclusions as to liability and upon finding that respondent's conduct was "intentional, very serious and wholly unexplained," recommended a four-year suspension.

In 2001, respondent's practice had expanded to include immigration law matters. She was retained by 10 clients to obtain alien labor employment certifications from the U.S. Department of Labor (DOL), which she successfully accomplished in 2007. The delay was solely attributable to the DOL. Nine of these clients also retained respondent to file for legal permanent residency on their behalf. Once an employment certificate had been issued, respondent was required, under 20 CFR 656.30, to file an I-140 petition with USCIS for legal permanent residency (green card petition) within 180 days. The employment certificates expressly stated that they were only valid for 180 days. After filing a green card petition for client RA, respondent received a letter in October 2008, notifying her it had been rejected as untimely, since it was submitted more than 180 days after RA's DOL employment certificate had been issued. Having not, as of that time, filed the green card petitions for her other eight clients, she realized that they would all be denied for the same reason. Respondent testified before the Referee that she took no notice of the 180-day filing requirement but acknowledged that she should have done so. By failing to maintain awareness of and comply with time-sensitive filing deadlines, respondent neglected nine of her client matters in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and we, therefore, sustain charges 1, 3, 6, 9, 11, 13-15 and 17.

We note that the client identified in charge 16 never retained respondent to file a green card petition. Consequently, we confirm the Hearing Panel's recommendation that charge 16 was not sustained.

Respondent was also charged with effectively withdrawing from representation and failing to return unearned fees to five clients whose green card petitions she either did not timely file or failed to file at all.

Respondent acknowledged that she received legal fees and filing fees from three clients, BG, MW and LP in connection with filing green card petitions for them and that she did not file the petitions. Respondent admitted that she should have refunded the money by October 2008 at the latest, when she learned that the petitions could no longer be timely filed. As of the time she gave testimony before the Referee in 2014, she still had not returned those fees. By failing to return the funds entrusted to her by these three clients, respondent failed to promptly refund unearned fees and/or filing fees in violation of DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]) and we, therefore, sustain charges 8, 10 and 12.

Respondent also acknowledged that she received legal fees and filing fees from her client SW, in order to file a green card petition for her, which petition was never filed. Respondent should have refunded the money by October 2008 at the latest, when she learned that the petitions could no longer be timely filed. The record shows that respondent returned $3,000 to SW in March 2010, as reimbursement for the cost of the filing fees. The unearned legal fees were never returned. Accordingly, we sustain charge 5 only to the extent that respondent did not refund the unearned legal fee to that client in violation of DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]).

Charge 2 pertained to client RA, for whom respondent had filed a green card petition, but which was rejected as untimely. The filing of the petition required payment of the filing fee for which RA had provided funds. The record demonstrates that in 2011 the DDC returned to RA 10 money orders made payable to USCIS in the amount of $6,505, which RA had previously entrusted to respondent. We find no violation of DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]) in connection with charge 2.

Charges 4 and 7 pertain to respondent having altered the payee on money orders entrusted to her by her clients for the payment of fees required to file the green card petitions. Two of respondent's clients, SW and BG, each separately gave her

money orders to pay the required filing fees. BG gave her four money orders payable to USCIS, totaling $2,495, which were purchased in September 2007. Likewise, SW gave respondent four money orders, payable to USCIS, totaling $2,495, which were purchased in October 2007. Respondent admitted that the money orders were never used for their intended purpose, because she never filed green card petitions for these clients. Instead, respondent overwrote the named and intended payee on each of the eight money orders with her own name. The money orders were then deposited into respondent's operating account and used to pay her business office expenses. She admitted that she did not have her clients' permission or authority to use the funds in such a manner. She also acknowledged that what she did was "completely wrong," and stated that she never intended to keep these funds for herself. The account into which those funds was deposited no longer exists. Although respondent refunded SW's filing fees in March 2010, she has not made restitution of the filing fees to BG. The venal intent necessary to support intentional conversion of these funds is established in that respondent knowingly endorsed her clients' money orders to herself and, then without the clients' permission, deposited the monies into her personal account which were used to pay her personal expenses (*Matter of Katz*, 109 AD3d 143, 146 [1st Dept 2013]). We find that respondent intentionally converted client funds for her own use in violation of DR 1-102 (a) (4) (NYCRR 1200.3 [a] [4]) and sustain charges 4 and 7.

Based on respondent's overall misconduct reflecting adversely on her fitness as an attorney in violation of DR 1-102 (a) (7) (NYCRR 1200.3 [a] [7]), we also sustain charge 18.

Leaving aside the charges for conversion of client funds, we observe that the 14 other charges sustained would in themselves warrant a sanction, albeit something less than disbarment (*see e.g. Matter of Moody*, 88 AD3d 54, 57 [1st Dept 2011] [six-month suspension for neglect of seven client matters over four-year period]; *Matter of Alperin*, 66 AD3d 309, 313 [1st Dept 2009] [two-year suspension for concealing the neglect of five client matters]; *Matter of Furizaig*, 305 AD2d 7, 11 [1st Dept 2003] [five-year suspension for, inter alia, neglect of client matters, despite absence of prior disciplinary history]; *Matter of Frank*, 260 AD2d 62, 64 [1st Dept 1999] [public censure for failure to return unearned retainer fees]). This Department, however, has consistently held that absent "extremely unusual

mitigating circumstances," the intentional conversion of client funds mandates disbarment (*Matter of Babalola*, 139 AD3d 61, 66 [2016] [internal quotation marks omitted]; *Matter of Escalante*, 127 AD3d 37 [1st Dept 2015]; *Matter of Katz*, 109 AD3d at 146; *Matter of Taylor*, 113 AD3d 56, 60 [1st Dept 2013]; *Matter of Kennedy*, 99 AD3d 75, 78 [1st Dept 2012]; *Matter of Kirschenbaum*, 29 AD3d 96 [1st Dept 2006]). While barring an attorney from practicing law is the most serious disciplinary consequence, the rule mandating disbarment for the intentional conversion of client funds is applied "virtually without exception" (*Matter of Kohn*, 31 AD3d 203 [1st Dept 2006]; *Matter of Schmell*, 27 AD3d 24, 27 [1st Dept 2006]). We have recognized that the rule "is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds" (*Matter of McCann*, 3 AD3d 5, 8 [1st Dept 2003] [internal quotation marks omitted]).

The Referee observed that respondent "offer[ed] no pertinent explanation and no justification whatsoever" for altering the money orders and converting her clients' funds for own use. Although respondent stated that she was in shock and in a daze upon learning that she had missed the petition deadline for a number of clients, she could not recall whether she altered the money orders before or after the mistake came to light.

In mitigation, at the hearing, respondent compellingly demonstrated the aberrational nature of her behavior, her extreme remorse and that she has an otherwise unblemished disciplinary history. Respondent also stated that it was her intent to restore the converted funds to her clients and she actually did so, in part. Respondent's claim of extremely unusual mitigating circumstances rests in large part on her history of providing pro bono legal services to undocumented immigrants and general service to the community. A chaplain of the New York City Fire Department, who has known respondent since 1997, confirmed respondent's benevolence, noting that she has volunteered her time at the parish of St. Francis of Assisi where she, among other things, helped found a library and provided pro bono legal services to "hundreds of immigrants" through its immigration clinic. Respondent has also taken remedial measures to prevent future misconduct, including closing her solo practice and working for the past six years under the supervision of an experienced attorney practicing

law in the area of disability civil rights. The supervising attorney, who has known respondent since they both attended law school, vouched for respondent's overall honesty and trustworthiness.

In determining whether mitigation is "extremely unusual" this Court does not recognize remorse, the absence of a prior disciplinary record or cooperation with the DDC as a sufficient basis to avoid disbarment (*Matter of Birnbaum* 308 AD2d 180, 183 [1st Dept 2003]; *Matter of Harley*, 298 AD2d 49, 51 [1st Dept 2002]). Also insufficient is a lack of intent to keep the funds, the fact that restitution was actually made or that the amount of the money involved was relatively small (*see Matter of Babalola*, 139 AD3d 61 [2016] [full restitution did not constitute extremely unusual mitigating circumstances]; *Matter of Dicker*, 102 AD2d 163, 166 [1st Dept 1984] [conversion of $563.50 still warranted disbarment]). Although respondent has presented character evidence of her good reputation and altruistic endeavors in her community, we do not find that this mitigation evidence is "extremely unusual" for it to support on its own (or even in conjunction with the other mitigating circumstances presented) a basis to deviate from the penalty of disbarment (*see Matter of Babalola*, 139 AD3d at 66 [reputation for honesty and service to the community did not constitute extremely unusual mitigating circumstances]).

While we recognize that what will constitute extremely unusual mitigating factors is a sui generis inquiry, we note that in the rare circumstances when we have made such a finding, the facts were dissimilar from this case (*see Matter of Molinini-Rivera*, 24 AD3d 36 [1st Dept 2005]; *Matter of Albanese*, 274 AD2d 284 [1st Dept 2000]; *Matter of Munzer*, 261 AD2d 87 [1st Dept 1999]).

Accordingly, the Committee's petition to confirm the Hearing Panel's findings of fact and conclusions of law should be granted to the extent of sustaining charges 1, 3, 4, 5 in part, 6-15, 17 and 18, denied as to charge 2, the recommended sanction of suspension should be disaffirmed, and respondent should be disbarred and her name stricken from the roll of attorneys and counselors-at-law in the State of New York.

SWEENY, J.P., ACOSTA, RENWICK, MANZANET-DANIELS and GISCHE, JJ., concur.

Respondent disbarred, and her name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.