[60 NYS3d 143]

In the Matter of MARK A. BLOOMBERG, an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 22, 2017

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee,* New York City (*Jun H. Lee* of counsel), for petitioner.

*Longo & D'Apice, Esqs.* (*Mark A. Longo* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Mark A. Bloomberg was admitted to the practice of law in the State of New York by the Second Judicial Department on December 5, 1990. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

In 2016, the Attorney Grievance Committee brought 17 charges against respondent, alleging violations of Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15 (a), (d) (i) and (ii), (e) and 8.4 (c) and (h). These charges are based on respondent's intentional conversion of more than $200,000 in connection with three separate client matters over several years. Respondent, represented by counsel, submitted an answer that denied the charges, but later admitted to them at the Referee's hearing and stipulated to the amount of funds withdrawn as set forth in the charges. Following respondent's testimony, the Referee sustained all the charges. After submissions of post-hearing memoranda, the Referee in his report reiterated his decision sustaining all of the charges and recommended respondent be disbarred.

The Committee now seeks an order, pursuant to 22 NYCRR 603.8-a (t) (4), affirming the Referee's findings of liability and recommendation of disbarment. Respondent opposes the Committee's motion and requests this Court impose either a public censure or suspension.

For the reasons explained below, we now confirm the Referee's report in full, including the recommendation of disbarment.

In or about September 2012, respondent represented an estate in the sale of a cooperative apartment. In September 2012, the purchaser's down payment of $11,000 was deposited into respondent's IOLA account. Before closing, respondent

made withdrawals from his IOLA account which invaded the $11,000 down payment, eventually having the IOLA account balance fall below $11,000 in October 2012.

At the March 2013 closing, respondent received the balance of the purchase price totaling $261,082.70 in the form of two checks, which respondent misplaced. On April 8, 2013, the purchaser's attorney wired $261,082.70 into respondent's IOLA account, which was owed to the two beneficiaries of the estate, in the separate amounts of $153,161.35 and $97,500. On April 15, 2013, respondent made a partial payment of $97,500 to one beneficiary. Respondent still owed $55,661.35 to that beneficiary, as well as $97,500 to the other beneficiary (for a total of $153,161.35). On April 16, 2013, respondent's IOLA account fell to $147,021.62, and fell to $135,021.62 on April 30, 2013. In June 2013, two deposits in unrelated matters allowed respondent to pay both beneficiaries the remainder of what was owed.

Respondent admitted he did not have permission to invade the $11,000 down payment prior to closing, which was used to pay respondent's personal expenses. Further, respondent admitted that he intentionally converted funds post-closing which belonged to the two beneficiaries. Accordingly, the Referee determined that respondent converted funds in connection with the estate matter, and correctly found that respondent's actions violated rules 1.15 (a) and (e) and 8.4 (c).

In 2013, respondent represented a client in the sale of a cooperative apartment. In May 2013, respondent deposited the purchaser's $91,000 down payment into his IOLA account, and prior to closing, made withdrawals/transfers that invaded the down payment. The IOLA balance fell to $77,500 on June 19, 2013, and fell to $338.65 on July 22, 2013. After the sale closed on July 23, 2013, respondent made three partial distributions to the client. However, because respondent's IOLA balance was below the amount owed to the client for the third payment, respondent deposited a check drawn on his wife's account into his IOLA account, and transferred funds from his personal/business account into his IOLA account. These two deposits allowed respondent to make the third payment owed to his client. Because respondent failed to maintain the required bookkeeping records, the post-closing conversions in connection with this transaction may be greater than the amounts cited in the charges, thus an exact amount cannot be definitely determined.

Respondent admitted he intentionally converted client funds in connection with this transaction. Accordingly, the Referee found respondent misappropriated funds in connection with this matter, and correctly determined that respondent's actions violated rules 1.15 (a) and (e) and 8.4 (c).

In 2012, respondent represented another client in the sale of property to a corporate entity for $310,000. In May 2012, respondent deposited the purchaser's $10,000 down payment into his IOLA account. The transaction closed in June 2012, and respondent deposited the balance of $300,155.70 into his IOLA account. Respondent issued checks totaling $238,870 to the client, but still owed at least $17,500, which was not paid until December 3, 2013. Between October 2012 and October 2013, respondent repeatedly invaded his client's funds by making withdrawals/transfers, having the IOLA account balance fall to $4,588.62 in October 2012. It fell to $68.42 by October 2013. Again, respondent transferred funds from his personal/business account to his IOLA account, allowing him to make the $17,500 payment to his client on December 3, 2013.

Respondent admitted he invaded the client's funds to pay for his personal expenses and replenished the IOLA account with funds from his personal/business account. The Referee found that respondent misappropriated and intentionally converted funds in this matter, and correctly concluded that respondent's actions violated rules 1.15 (a) and 8.4 (c).

Respondent admitted he did not keep proper bookkeeping records for his IOLA account. The Referee found that respondent failed to keep proper IOLA account records, and correctly determined that respondent violated rule 1.15 (d) (i) and (ii). Further, the Referee correctly found that respondent's overall conduct violated rule 8.4 (h).

In mitigation, respondent testified he takes difficult cases on a charitable basis, has served as a volunteer EMT, has been active with the YM-YWHA and served as its president, volunteers to prepare bodies for burial in the Jewish manner, lost his father at the age of 23 and since then has been caretaker for his family, the financial pressures placed upon him resulted in his misguided decision to invade escrow funds, and that he suffers from health issues. Respondent stated that no complaints were filed against him, no client suffered financial loss, and such conduct would not recur if he were allowed to continue to practice law.

We agree with the Referee's liability findings and with the Referee that respondent be disbarred from the practice of law.

Absent "extremely unusual mitigating circumstances," intentional conversion of client or third party funds warrants disbarment (*Matter of Lubell*, 190 AD2d 479, 481 [1st Dept 1993]; *see e.g. Matter of Ballner*, 140 AD3d 115 [1st Dept 2016]; *Matter of Babalola*, 139 AD3d 61 [1st Dept 2016]; *Matter of Birnbaum*, 308 AD2d 180 [1st Dept 2003]).

Accordingly, the Committee's motion should be granted, the Referee's report is affirmed, respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

TOM, J.P., SWEENY, RICHTER, MANZANET-DANIELS and KAPNICK, JJ., concur.

Respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.