Matter of Bernier (2019 NY Slip Op 06577)





Matter of Bernier


2019 NY Slip Op 06577


Decided on September 17, 2019


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Judith J. Gische,Justice Presiding,
Marcy L. Kahn
Jeffrey K. Oing
Anil C. Singh
Peter H. Moulton,Justices.


M-2967

[*1]In the Matter of Melissa P. Bernier, (admitted as Melissa Philomene Bernier), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Melissa P. Bernier, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Melissa P. Bernier, was admitted, as Melissa Philomene Bernier, to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on September 16, 2009.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Yvette A. Rosario, of counsel), for petitioner.
Respondent pro se.



Per Curiam.


Respondent Melissa P. Bernier was admitted to the practice of law in the State of New York by the Second Judicial Department on September 16, 2009, under the name Melissa Philomene Bernier. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
In 2018, the Attorney Grievance Committee (AGC) commenced this proceeding alleging that respondent was guilty of professional misconduct in violation of the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.3(a) (failure to act with reasonable diligence and promptness in representing a client), 1.3(c) (intentional failure to carry out a contract of employment entered into with a client for professional services), 1.15(a) (commingling and misappropriation of client funds), 1.15(b) (failure to maintain client funds received incident to the practice of law in an escrow account), 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), and 8.4(h) (other conduct that adversely reflects on fitness as a lawyer). The allegations arise from, inter alia, her intentional conversion of funds, remitted by a criminal client, which were intended for payment of a court imposed fine. Respondent submitted an answer in which she admitted some of the alleged facts, denied others, and denied the charges.
A Referee conducted a liability hearing on December 17, 2018. After waiting approximately 40 minutes for respondent, and without receiving any communication from her, the Referee accepted documentary evidence from the AGC and sustained all six charges. The next day the AGC received a telephone call from an unidentified woman who claimed that respondent had been hospitalized at NYU-Langone Medical Center at the time of the hearing. The AGC contacted four NYU affiliated hospitals and confirmed that respondent was not a patient at any of them on the date of the liability hearing.
A sanction hearing was held on January 30, 2019 at which respondent appeared pro se and testified on her own behalf. During respondent's testimony, the Referee requested that she submit, among other things, documents evidencing her hospitalization on the date of the liability hearing. While respondent represented that she would do so, she did not. Respondent was also permitted to submit character letters within 30 days after the sanction hearing but none were submitted. The AGC submitted additional documents relevant to sanction and a post-hearing memorandum urging disbarment; respondent did not submit a post-hearing memorandum. By report dated May 16, 2019, the Referee recommends respondent be disbarred.
The Committee now moves, pursuant to 22 NYCRR 603.8-a(t) and 1240.8(b), for an order affirming the Referee's report in full. Respondent, who is pro se, was served with the motion but has not submitted a response.[FN1]
The facts are undisputed. In or about September 2014, respondent was retained to represent a client who had been charged with burglary in the second degree. It was alleged that the client, on a tourist visa to the United States from Martinique, had traveled by bus to Montreal and on the way back to New York City, he departed the bus and was arrested after he broke into a private home in upstate New York and went to sleep.
The client's sister had previously used respondent's services and retained her to represent the client. Respondent charged the client a flat fee of $10,000, plus travel expenses, of which all but approximately $200 was paid. Respondent negotiated a plea agreement whereby Baldara pled guilty to the reduced charge of burglary in the third degree and was sentenced to time served and fined $1,375 which was to be paid within one year. After his release from prison in December 2014, the client returned to Martinique.
On July 24, 2015, respondent's client wired her $1,375 to pay his fine which funds were deposited into respondent's operating/business account. During the period at issue, respondent maintained an escrow account at Citibank. Respondent failed to promptly pay the fine. Instead, she used $827 of this client's funds to pay for business and personal expenses unrelated to his case. Over one year later, in September 2016, after the client complained to AGC, respondent sent a certified check in the amount of $1,375 to the Warren County Clerk to satisfy his fine.
Based on the documentary evidence, the Referee found respondent intentionally converted and misappropriated client funds in violation of rules 1.15(a), 8.4(c), and 8.4(h); by depositing her client's funds into her operating/business account she failed to segregate client funds, as well as, commingled client and business funds in violation of rules 1.15(a) and 1.15(b); by not paying her client's fine until September 2016, respondent failed to act with reasonable diligence and promptness and intentionally failed to carry out a contract of employment in violation of rules 1.3(a) and 1.3(c); and by falsely affirming in her 2015 OCA registration that she was in full compliance with rule 1.15 when in fact she had engaged in the escrow related misconduct at issue, she violated rule 8.4(c).
During the sanction hearing respondent testified that she would provide documentation showing that she had been hospitalized at the time of the liability hearing, as well as, documents pertaining to her client's criminal case, but she never did so.
As to the conduct at issue, respondent admitted that she failed to deposit her client's funds into her escrow account, as she should have done, and improperly used the funds without permission to meet her business and personal expenses which were unrelated to his case because she "was juggling too much at the time" and not "paying proper attention to what I should have at the time."
Respondent attributed her delay in paying her client's fine to the fact that he did not include the $15 wire transfer fee with his $1,375 payment, and she declined to advance such because he was purportedly hostile towards her. However, she ultimately paid the fine in September 2016 after he filed his complaint against her so as to bring their relationship to a close.
In his report, the Referee opined that the record amply supported the charges.
"In addition to not paying the fine when the funds were received, it was established that the funds received were not deposited into respondent's escrow account or IOLA account, but rather were deposited into respondent's attorney operating account from which she paid her day to day expenses. When questioned at the sanctions hearing respondent could offer no explanation. On questioning, respondent admitted that it was wrong to deposit the [] fine payments into her personal account although she offered no explanation as to why she had done so. Further, respondent's testimony failed to offer any explanation or to indicate much concern.
"Respondent's casual indifference to the charges and her casual indifference to her commingling of [her client's] funds permeated the proceedings.
"It was established that when the funds earmarked for [her client's] fine were received by respondent, she had a negative balance in her operating account. Not only did respondent use the funds for her own personal needs, but she used [the] funds to essentially balance her bank account. When confronted at the hearing as to why she had done this, [respondent] recognized that it was wrong, but offered no explanation as to why".
The Referee found that respondent's misconduct was aggravated by her taking on the client's case when she had very limited experience in criminal law (having only appeared in two prior criminal proceedings), as an arguable result of which the client remained incarcerated for over 90 days from the date of his arrest; her failure to provide the requested documents pertaining to the case which may have shown the adequacy of her representation; her failure to appear at the liability hearing and "arguably providing a false explanation for her absence"; a lack of candor in [*2]her testimony at the sanction hearing and no remorse or contrition for her misconduct; and the fact she took advantage of her client who appeared to be "of limited mental competence."
On the issue of mitigation, the Referee noted that respondent did not call any witnesses, nor did she submit any character letters, and he opined that "[i]n her favor, respondent was pleasant and even charming [b]ut that was pretty much all."
As to his ultimate conclusion, the Referee found that
"It is arguable that [respondent] does not, as of the time of the sanctions hearing understand that what she had done was wrong. Her repeated claims that she did not know what she was thinking at the time, is far from a guarantee, much less a suggestion, that she would not do the same in the future.
"Precedent is clear that commingling of funds is adequate grounds for disbarment and the Committee cites numerous cases in support of the proposition. That some cases involve commingling or conversion of a greater amount of money than that commingled by [respondent] should be of no moment. To minimize the offense based on the limited amount misappropriated is to fail to heed a clear warning.
"The Committee recommends that respondent be disbarred. On this record, I cannot disagree with that recommendation. Accordingly, I recommend that respondent be disbarred."
The AGC argues that under the pertinent case law the Referee's liability findings and disbarment recommendation should be affirmed because the record shows that respondent used her client's funds without permission or authority for her own purchases rather than to pay the court imposed fine. Further, she showed no remorse for her misconduct and made a false claim as for the reason she did not appear at the liability hearing, in addition to which there are no mitigating circumstances.
We find that the Referee's liability findings sustaining the charges are fully supported by the record and should be confirmed in full. While the Referee did not specifically address the false affirmation charge, the documentary evidence and respondent's testimony clearly show that she falsely certified in her 2015 attorney registration that she was in full compliance with rule 1.15 regarding her handling of escrow funds when this was not the case.
As to the sanction, the Referee's disbarment recommendation should be confirmed because our precedent establishes that "[a]bsent extremely unusual mitigating circumstances," intentional conversion of client or third-party funds warrants disbarment (Matter of Lubell, 190 AD2d 479, 481 [1st Dept 1993]). We have consistently disbarred attorneys who intentionally convert client or third-party funds (see e.g. Matter of Bloomberg, 154 AD3d 75 [1st Dept 2017]; Matter of Ballner, 140 AD3d 115 [1st Dept 2016]; Matter of Babalola, 139 AD3d 61 [1st Dept 2016]; Matter of Escalante, 127 AD3d 37 [1st Dept 2015]; Matter of Maruggi, 112 AD3d 180 [1st Dept 2013]; Matter of Katz, 109 AD3d 143 [1st Dept 2013]).
Accordingly, the Committee's motion to confirm the Referee's findings of fact, conclusions of law and sanction recommendation should be granted, and respondent disbarred and her name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.
All Concur.
Order Filed. [September 17, 2019]
The motion is granted and the referee's findings of fact, conclusions of law, and sanction recommendation are confirmed, and respondent is disbarred and her name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.



Footnotes

Footnote 1: Since respondent accepted service of the petition of charges by mail, the AGC similarly served respondent with the instant motion at her three mailing addresses, one of which is her OCA registered address.