[609 NYS2d 588]

In the Matter of STEPHEN A. WEINGRAD, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 22, 1994

**APPEARANCES OF COUNSEL**

*Hal R. Lieberman* for petitioner.

*Henry Mark Holzer* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Stephen A. Weingrad, was admitted to the practice of law in New York by the First Judicial Department on June 29, 1964. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On or about November 26, 1991 and December 27, 1991 respondent was served with a notice and statement of charges and a statement of amended charges, respectively. The charges alleged that respondent used client and trust funds for personal purposes; neglected a client's case for nearly four years and made false statements to the client about his efforts on her behalf, in violation of DR 1-102 (A) (4) and (6) (subsequently [7], now [8]), DR 6-101 (A) (3) and DR 9-102 (A) of the Code of Professional Responsibility.

On or about February 13, 1991, respondent served a verified answer denying many of the factual allegations in the charges and denying that he had engaged in any professional misconduct.

A Hearing Panel convened and held hearings on the charges on May 18, 1992, June 8, 1992, December 3, 1992 and June 9, 1993. During the hearings the following facts were adduced.

Three separate charges of financial misconduct were raised against respondent. The first two allege that respondent committed financial misconduct with respect to his handling of specific client funds, while the third charge alleges that respondent had an ongoing practice of using client trust funds to meet his office payroll expenses and other personal or business needs. The fourth and fifth charges, neglect of a case and misrepresentations to the client, arose in connection with a wrongful death action.

As executor under the will of a deceased and as the estate's attorney, respondent handled the sale of the estate's cooperative apartment. The purchaser's deposit check, in the amount of $11,000, was deposited in a Chase account entitled "Weingrad and Weingrad, P.C. Special Account" (the Chase Special Account) on October 18, 1988. On or about November 8, 1988, an account was opened in the name of the estate at Manufacturers Hanover Bank with a deposit of $1,000. On November 15, 1988, however, the day after the closing, checks for $90,250 and $15,000 received on the sale of the apartment were

deposited in the Chase Special Account. After closing disbursements, respondent should have been holding $104,097 for the estate. It is undisputed, however, that between November 15 and November 28, 1988 respondent's office drew checks on the Chase Special Account, some payable to cash to cover the office payroll, which reduced such account to approximately $38,000 below that amount.

Respondent has testified that due to serious family problems he was not running the day-to-day operations of his office during that period, was unaware of the balance in the account, and did not intentionally convert the estate's funds. He further testified that at that time his personal financial situation was secure and that he had cash and stocks on deposit with Banker's Trust in excess of $500,000, all liquid.

In early 1991 respondent deposited in the Chase Special Account a check for $19,000 received in settlement of another client's tort action. While negotiating with the Department of Social Services with respect to a lien on the recovery, he similarly failed to maintain the funds intact in such account.

Respondent had admitted that it was his practice over 28 years to draw checks every two weeks to cover his payroll and office expenses.

The fourth and fifth charges against respondent arose from his representation of the widow of a deceased in a wrongful death action. The driver of the van which killed decedent died before he could be deposed, and respondent chose not to depose his wife, an employee of the defendant corporation and a critical witness with respect to the defense contention that the driver, her husband, had no authority to operate the van. More than five years after the accident respondent met with the victim's daughter and a friend to discuss the status of the case. The daughter testified at respondent's hearing that he had told her that the case was a "no-win" case and that he had not deposed the driver's wife because she no longer worked for the company and had left the State and because he had the deposition of another employee that the driver had been authorized. The daughter discharged respondent soon after their meeting and replaced him with another attorney who expeditiously located and deposed the driver's widow, who was still working for the defendant, and two other drivers as well. The new attorney also discovered that the driver was covered by a $100,000 insurance policy, discovered that no one had applied for no-fault insurance benefits, made the applica-

tion and received $2,000 in benefits on behalf of the estate, got the case ordered to trial, and settled it for $120,000.

With respect to the first charge, the Hearing Panel, relying on *Matter of Altomerianos* (160 AD2d 96), found that respondent's actions with respect to the estate's proceeds from the sale of the apartment violated DR 9-102 (A), which concerns failure to safeguard client funds, in allowing the balance in the Chase Special Account to drop below the amount due the estate and violated DR 1-102 (A) (6), which concerns conduct reflecting adversely on one's fitness to practice law, in using or otherwise borrowing the client's funds without the client's express authorization. With respect to DR 1-102 (A) (4), which concerns conduct involving dishonesty, fraud, deceit, or misrepresentation, however, the Panel found that the evidence did not establish the existence of venal intent; no evidence was introduced suggesting an intention to permanently convert any funds, nor was it shown that respondent acted in a manner which can be classified as "deceitful" or "dishonest."

With respect to the second charge, relating to the settlement received in the tort case, the Panel found violations of DR 1-102 (A) (7) (now [8]) and DR 9-102 (A) but, with no establishment of venal intent, no violation of DR 1-102 (A) (4).

With respect to the third charge, relating to respondent's ongoing practice of drawing checks to "cash" from the special accounts, the Panel similarly found violations of DR 1-102 (A) (7) (now [8]) and DR 9-102 (A), but not DR 1-102 (A) (4).

With respect to the fourth and fifth charges, the Panel found that respondent violated DR 6-101 (A) (3) in failing to diligently pursue discovery and violated DR 1-102 (A) (4) and (7) (now [8]) when he falsely told the client that the driver's widow had left the State and the company. The Panel found that respondent did not violate any disciplinary rule, however, in telling the client she had no case but was expressing his opinion of the case.

On April 14, 1993, the Panel issued its written report sustaining the charges set forth above and recommending that a public censure be imposed. In reaching this conclusion the Panel stated that it had taken into account respondent's prior unblemished record; the absence of any indication that any of respondent's many clients, other than in the wrongful death case, had any complaint concerning the professional handling of a matter entrusted to respondent; and the very considerable *pro bono* and public interest activity of respondent.

With respect to respondent's acts of financial misconduct, the Hearing Panel stated that they recognized the serious nature of respondent's misconduct but they believed that a suspension would be unduly harsh under the circumstances of this case.

On May 18, 1993, the Disciplinary Committee moved for an order granting reconsideration of the Panel's recommendation and instead recommended a period of suspension from the practice of law, arguing that the sanction of censure is inconsistent with other cases involving the conversion of a client's funds.

On July 1, 1993, in a second written report, the Hearing Panel recommended that respondent be suspended from the practice of law for a period of one year with respect to the charges relating to financial misconduct and that he be publicly censured with respect to the charges of neglect and misrepresentation.

By petition dated August 13, 1993, the Disciplinary Committee is now seeking an order confirming the Hearing Panel's findings of fact and conclusions of law and imposing a sanction that is just and equitable in the circumstances, but no less than the one-year suspension recommended by the Panel in its report of July 1, 1993. Relying on the recent case of *Matter of Pelsinger* (190 AD2d 158), wherein the attorney had engaged in a pattern of commingling and use of escrow funds without intent to deprive, and in fact no client lost money and where the Court imposed a suspension of three years, the Committee argued that evenhanded treatment would suggest that respondent receive a like sanction.

By cross motion dated October 15, 1993, respondent requested an order reinstating and confirming the Hearing Panel's original report and recommendation of public censure.

Respondent does not dispute the findings of the Hearing Panel that he is guilty of the violations set forth. The only remaining issues are the propriety of the Hearing Panel's reconsideration of its recommendation and the appropriate sanction to be imposed. The Hearing Panel did not open the record or proceeding in order to receive additional evidence but, on notice to respondent, reconsidered its recommendation. Respondent's rights were not violated by its doing so.

Although respondent commingled escrow money and converted clients' funds, he did so without venal intent. *Matter of Greenberg* (165 AD2d 424), which imposed only censure, is

distinguishable in that there the attorney was charged only with commingling, not conversion. And in *Matter of Pelsinger (supra),* which imposed a three-year suspension, the attorney had failed to cooperate with the Committee and had failed to produce pertinent documentation throughout the hearing. In the instant case there is no charge that respondent failed to cooperate. Moreover, he had engaged in considerable *pro bono* and public interest activity and, except for the violations charged, his record was a good one. The closest case is *Matter of Altomerianos (supra),* where there was conversion but no venal intent and where a two-year suspension was imposed. In the instant matter, however, in view of respondent's considerable *pro bono* work and public interest activity, it seems that a one-year suspension is appropriate.

The petition of the Committee is granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law. The cross motion by respondent is denied. Respondent is suspended from the practice of law for a period of one year.

ELLERIN, J. P., ROSS, ASCH, RUBIN and NARDELLI, JJ., concur.

Application is granted only to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, the cross motion to disaffirm is denied, and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of one year, effective April 22, 1994, and until the further order of this Court.