[615 NYS2d 24]

In the Matter of ROBERT J. BURTON (Admitted as ROBERT JULIAN BURTON), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 28, 1994

## APPEARANCES OF COUNSEL

*Joel Sternman* and *Diane da Cunha* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*J. Bruce Maffeo* of counsel *(Bernstein & Maffeo,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Robert J. Burton, was admitted to the practice of law in New York by the Second Judicial Department on October 1, 1980. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On or about September 10, 1991 respondent was served with a notice and statement of charges. The facts adduced before a Hearing Panel showed that respondent participated in a closing as to cooperative apartments. He represented several buyers who were business partners and he himself also had an interest. Apparently, the sellers attempted to thwart the closing and respondent was hard-pressed to obtain funds necessary to complete the transaction which had a "time is of the essence" deadline.

As of July 24, 1985, respondent's escrow account had a balance of nearly $30,000. That balance included the following sums:

(a) $7,250 given to "Robert J. Burton, as escrow agent", by Frederick C. Dunbar and Plave Dunbar on June 28, 1985 in connection with their purchase of an apartment.

(b) $5,398 given to "Robert J. Burton, Attorney Escrow Account" on May 5, 1985 by Solomon Revich as down payment on an apartment.

(c) In excess of $3,000 belonging to tenants who had made security deposits to Burton as their landlord.

Thereafter, on July 25, 1985, the date of the closing with the seller, respondent initially deposited almost $7,000 of his personal funds into his escrow account. He then wrote three checks on the escrow account which Citibank, upon respondent's request, certified. On the same day, two other checks drawn by respondent on the escrow account cleared through the account. As a result of the transactions which took place in the escrow account on July 25, 1985, at the close of

business on that date, the balance of the escrow account was reduced to less than $1,000.

As a result of these transactions, respondent effectively withdrew the Dunbars', Mr. Revich's and the tenants' funds from the escrow account.

After receiving funds from a client and business partner, respondent deposited them into his escrow account on July 30, 1985. This fully replenished the funds which had been withdrawn.

As a result of respondent's actions he was charged with intentionally converting clients' funds to his own use during the period July 25, 1985 to July 30, 1985, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4), and in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (Counts One, Two and Three).

Respondent, by depositing his own funds into his escrow account and failing to maintain the escrow account intact, was further charged with failing to preserve the identity of clients' funds, in violation of DR 9-102 (A), and engaging in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (Count Four).

In an unrelated matter, in late 1985, respondent began negotiations on behalf of Pesochinsky, his client, to sell an apartment owned by Pesochinsky to Ray Azoulay. Azoulay had retained an attorney in connection with the negotiations.

On December 12, 1985, respondent met with Azoulay, at the latter's request outside the presence of and without the knowledge or consent of, Azoulay's attorney. Specifically, Azoulay stated that he had retained new counsel but wished to proceed with the conversation in that attorney's absence.

At that meeting, respondent secured Azoulay's acceptance of respondent's modification or "qualification" of contracts of sale drafted by Azoulay's former attorney.

On or about December 16, 1985 respondent commenced an action against Azoulay to enforce the "qualified" contracts. On December 16, 1985 respondent also notified Azoulay's former attorney of his meeting with Azoulay. Respondent did not communicate with Azoulay's new attorney until after December 24, 1985.

As a result of these actions respondent was charged with intentionally communicating during the course of his repre-

sentation of a client with a party he knew to be represented by counsel on the subject of the representation without the prior consent of that party's counsel, in violation of DR 7-104 (A), and with conduct which adversely reflects upon his fitness to practice law, in violation of DR 1-102 (A) (6) (Count Five).

The Hearing Panel declined to sustain Counts One, Two and Three to the extent those charges allege "dishonesty, fraud, deceit or misrepresentation", because they concluded that respondent acted without venal intent. The Hearing Panel sustained Counts One, Two and Three, insofar as they allege that respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (subsequently [7], now [8]). The Hearing Panel further sustained Count Four, which alleges a violation of DR 9-102 (A) (commingling personal funds with escrow funds), and Count Five, which alleges violation of DR 7-104 (A) and DR 1-102 (A) (6) (subsequently [7], now [8]), based upon respondent's negotiations with Azoulay, a party known to be represented by an attorney, without the prior consent of the attorney.

While two of the three clients whose funds were improperly used indicated after the fact that they would have given respondent their consent to use their funds, if asked, the Hearing Panel pointed out that no such ratification was provided from the tenants. Further, the Panel pointed out that the clients could not consent to the use of their escrowed funds. When parties to a real estate transaction agree that the lawyer of one party or another will hold money in escrow it is not either party's money to disburse at will.

The Departmental Disciplinary Committee is now seeking an order confirming the Hearing Panel's findings of fact and conclusions of law and imposing the Panel's recommended sanction of suspension for a period of four years.

In a cross motion, respondent seeks an order confirming the Hearing Panel's findings of fact and conclusions of law but disaffirming the recommended sanction. Respondent requests a sanction of either public censure or a lesser period of suspension.

We find that a review of the record indicates that there is ample evidence to support the Hearing Panel's findings that respondent engaged in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (subsequently [7], now [8]); failed to maintain client funds intact and preserve the identity of client funds, in violation of DR 9-102

(A); and communicated with a party known to be represented by a lawyer without prior consent of the lawyer, in violation of DR 7-104 (A) and DR 1-102 (A) (6) (subsequently [7], now [8]). Respondent also concedes that he is guilty of the violations found by the Hearing Panel.

No evidence was presented, however, in this case to indicate that respondent converted any of the clients' and tenants' funds to his own use or acted with venal intent. It appears that the shortfall in respondent's escrow account for a period of five days was the result of his use of the escrow funds to avoid what he perceived to be unlawful conduct being committed by the sellers in a real estate transaction in which he was representing several buyers, who were clients and business partners and in which he also had an interest. Respondent fully replenished the funds and no one who had money deposited in respondent's escrow account which was improperly used suffered any loss.

The lack of venal intent on the part of respondent distinguishes this case from those where attorneys have been disbarred for conversion. In cases where the mishandling of client funds arose primarily out of an attorney's carelessness or the attorney was mistaken as to his entitlement to his client's funds and there was no motive to convert, the sanction imposed by this Court has been suspension from the practice of law. (See, Matter of Klugerman, 189 AD2d 284 [1st Dept 1993]; Matter of Altomerianos, 160 AD2d 96 [1st Dept 1990]; Matter of Altschuler, 139 AD2d 311 [1st Dept 1988].)

While, in the case at bar, the Hearing Panel has recommended a four-year suspension, in view of the sanctions imposed in cases involving similar misconduct by this Court and the substantial evidence in mitigation presented in this case, including the fact that the misconduct was an isolated event which took place almost 10 years ago, we conclude that the Hearing Panel's recommended sanction is unduly harsh.

Thus, Matter of Pelsinger (190 AD2d 158 [1st Dept 1993]), relied upon by the Hearing Panel, is inapposite. In Pelsinger, this Court imposed a three-year suspension upon an attorney who was found to have no motive to convert when he drew checks for personal and business expenses on accounts which contained client funds. It was concluded that Pelsinger's misconduct was the result of sloppy or nonexistent record keeping. The Court took into consideration, in imposing the three-year suspension, that Pelsinger had failed to cooperate with

the Committee in its investigation of the charges and failed to produce pertinent documentation throughout the hearing.

In the case at bar, however, there was no charge that respondent failed to cooperate. Instead, the Hearing Panel found that he fully cooperated and noted that he disclosed the facts regarding his escrow violation to the Committee in 1986.

The recent case of *Matter of Weingrad* (196 AD2d 300 [1st Dept 1994]) is more closely related to respondent's situation. In *Weingrad,* the attorney was found to have engaged in an ongoing practice of using client funds to meet his office payroll expenses and other personal or business needs. He also neglected a client matter entrusted to him and falsely told the client that a party he should have deposed had left the State, when in fact she had not. During the short intervals where the balances in Weingrad's escrow account fell below the amounts he was supposed to hold in escrow for the benefit of clients, respondent had substantial assets. Finding that Weingrad did not act with venal intent and that his actions were the result of carelessness, this Court imposed a one-year suspension.

Taking into consideration the fact that respondent's use of escrow funds, while intentional, was not motivated by venality and that respondent fully cooperated with the Disciplinary Committee, we conclude that the sanction of a one-year suspension from the practice of law would be appropriate.

Accordingly, the Committee's petition, insofar as it seeks an order confirming the Hearing Panel's findings of fact and conclusions of law, is granted, but the Hearing Panel's recommended sanction of suspension from the practice of law for a period of four years is disaffirmed and respondent is suspended from the practice of law for a period of one year and until the further order of this Court.

Respondent's cross motion which seeks an order confirming the Hearing Panel's findings of fact and conclusions of law but disaffirming the recommended sanction and imposing a lesser sanction is granted to the extent indicated above.

MURPHY, P. J., CARRO, WALLACH, ASCH and TOM, JJ., concur.

Application and cross motion granted only insofar as to confirm the Hearing Panel's findings of fact and conclusions of

law, and to disaffirm the recommended sanction, and respondent is suspended from practice for a period of one year, effective August 28, 1994, and until the further order of this Court.