Matter of Felicetti (2020 NY Slip Op 00253)





Matter of Felicetti


2020 NY Slip Op 00253


Decided on January 14, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 14, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Dianne T. Renwick, Justice Presiding,
Sallie Manzanet-Daniels
Angela M. Mazzarelli
Troy K. Webber
Jeffrey K. Oing, Justices.


M-3393 CM7226

[*1]In the Matter of Scott A. Felicetti, (admitted as Scott Arthur Felicetti) an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Scott A. Felicetti, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Scott A. Felicetti, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on May 10, 1989.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Orlando Reyes, of counsel), for petitioner.
Howard Benjamin, Esq., for respondent.
Motion Nos. M-3393 & C


PER CURIAM


Respondent Scott A. Felicetti was admitted to the practice of law in the State of New York by the Second Judicial Department on May 10, 1989, under the name Scott Arthur Felicetti. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
The Attorney Grievance Committee (AGC)seeks an order pursuant to the Rules of the Appellate Division, First Department (22 NYCRR) § 603.8-a(t)(4) and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(b)(2), confirming in full the findings of misconduct by a Referee and disbarring respondent. Respondent cross moves, requesting that the majority of the Referee's liability findings be disaffirmed, the recommendation of disbarment be disaffirmed, and that this Court impose a "substantially lesser sanction."
This disciplinary proceeding arises out of several separate allegations of misconduct involving, inter alia, respondent's use of his attorney escrow account, including misappropriation and commingling of client funds, refusal to release settlement funds that were the property of a client, and neglect of client matters. Regarding the escrow allegations, an investigative accountant called by the AGC testified at the hearing on liability that his audit of respondent's account records showed the following: on December 1, 2014, respondent deposited into his escrow account $25,000 in settlement funds on behalf of a personal injury client, and that on the same date he deposited into the account a $10,000 check received on behalf of another client. On the next day, respondent withdrew $8,333 from his escrow account as his one-third legal fee in the first matter, which he deposited into his business (i.e., operating) account. Between December 1, 2014 and January 29, 2015, respondent made no payments to either client, during which period he transferred $32,875 from his escrow account to his business account via 22 separate electronic transfers; and, as of January 29, 2015, his escrow account balance had fallen to $62.28 when he should have been holding $16,655 for the first client and $10,000 for the other.
Further, the December 2014 bank statement for respondent's business account showed that: aside from his $8,333 legal fee in the first client's case, the only other deposits to his business account were transfers from his escrow account; on four dates in December, which were close in time to the electronic transfers from the escrow account, the business account had a negative balance; and, during the period at issue, respondent used the funds transferred from his escrow account to his business account to pay for, among other things, personal expenses which included restaurant, department store, and entertainment charges via the use of a debit card.
In addition, the January 2015 bank statement for respondent's business account showed that, except for one deposit for $561, the only deposits to this account came from his escrow account, which cured the negative balances in his business account, and were mostly used to cover his personal expenses. On March 31, 2015, respondent deposited an additional $67,500 in settlement funds in the first personal injury matter into his escrow account. On April 2, 2015, he paid himself $5,833 out of these funds as a legal fee even though he was entitled to a one-third legal fee of $22,500. The difference between the $22,500 and $5,833 ($16,667) represented the amount he previously misappropriated via the electronic transfers from his escrow account to his business account and the withdrawals therefrom described above. On June 15, 2015, respondent issued an escrow check to the first client for $61,667 in payment of the amount that he had misappropriated during the preceding six months. Respondent denied before the Referee that he intentionally converted client funds, but admitted that he failed to maintain required bookkeeping records, as a result of which he claimed to have been unaware that his transfers of funds from his escrow account to his business account were invading client funds.
Other charges related to the way in which respondent handled other client matters, including that of a personal injury client called to testify by the AGC. Respondent settled that client's case for $650,000 in October 2014, at which time he took his one-third legal fee of $216,666. He and the client orally agreed that he would pay her $10,000 and would hold the [*2]remaining funds until she wanted them. Between November 2015 and March 2016, respondent distributed an additional $10,000 to the client in increments as requested but thereafter stopped complying with her requests for funds. In order to obtain the balance of her settlement funds, the client had to retain counsel and file suit against respondent. Respondent defaulted in the action, which he unsuccessfully sought to have vacated. In April 2018, respondent paid the client the balance of her funds, which amounted to $355,558, out of which she had to pay her counsel $118,000 as a one-third contingency fee.
The Referee also heard witness testimony and received evidence that respondent mishandled the personal injury matters of four other clients, including abandoning their matters, failing to comply with their reasonable requests for information, and failing to promptly transfer their files to successor counsel (which, in two instances, required court orders directing him to do so).
Respondent also admitted that since 2010 and 2013, respectively, he failed to file retainer and closing statements with the Office of Court Administration (OCA) as required by 22 NYCRR 603.25(a) and (b). Finally, the AGC presented evidence that respondent failed to cooperate with its investigation in that he repeatedly failed to meet the Committee's deadlines for production of various documents, and he failed to comply with a judicial subpoena directing him to appear for a deposition.
As evidence in aggravation, the AGC introduced a 2007 Admonition the Committee issued to respondent for his neglect of two separate client matters, failure to transfer or return his clients' files, and failure to cooperate with the investigation. In mitigation, respondent testified that he experienced severe illness in the years after 2000, that he went through a custody dispute which resulted in his being granted sole custody of his son, that he is a single parent raising his son while trying to maintain his solo law practice, that he recently developed a dangerous high blood pressure condition that requires medication and medical supervision, and that he has reformed his law practice by associating with other attorneys who can assist him with his caseload, and has changed the computer program by which he manages his escrow and business accounts.
The Referee upheld all of the charges. He found that respondent misappropriated and intentionally converted client funds in violation of rules 1.15(a) (misappropriation) and 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). Specifically, the Referee found that the evidence established that respondent knowingly withdrew client funds without permission or authority to do so, and used them for his own personal purposes. In making this finding, he rejected respondent's claim that the misappropriation was caused by mere flaws in respondent's bookkeeping methods. In addition, the Referee found that respondent commingled personal funds with client funds in violation of the Rules of Professional Conduct (22 NYCRR) rule 1.15(a), made withdrawals from his escrow account to non-named payees in violation of rule 1.15(e) (requiring that all withdrawals from an attorney special account be made only to named payees), failed to maintain required bookkeeping records in violation of rule 1.15(d), and failed to file retainer and closing statements with OCA as required by 22 NYCRR 603.25(a) and (b) in violation of rule 8.4(d) (conduct prejudicial to the administration of justice).
The Referee sustained the charge related to respondent's client who had to commence an action against him to recover personal injury settlement funds he had secured for her, finding that respondent failed to promptly pay his client her rightful share of her personal injury settlement as she requested in violation of rule 1.15(c)(4) (requiring lawyer to promptly pay to client as requested by client funds in possession of the lawyer that client is entitled to receive). The Referee found that this misconduct had grave consequences for the client in that she had to pay one-third of the recovered funds to the lawyers she retained to file suit against respondent. In connection with the other client matters, the Referee found that respondent, by neglecting certain matters, violated rule 1.3(b), that he failed to comply with his clients reasonable requests for information in violation of 1.4(a)(4), and that, after abandoning his clients, he failed to promptly [*3]turn over their files to successor counsel and thereby withdrew from their matters without taking steps to avoid foreseeable prejudice to them in violation of rules 1.16(e) and 8.4(d).
The Referee also found that respondent failed to cooperate with the Committee's investigation in violation of rule 8.4(d), and finally, that respondent's misconduct in the aggregate adversely reflected on his fitness as a lawyer in violation of rule 8.4(h).
The Referee found that respondent's misconduct was aggravated by his 2007 Admonition. As to his mitigation evidence, including that he is a single parent raising a son while trying to maintain his solo law practice and deal with medical issues, the Referee found that respondent failed to establish that it caused any of the wrongdoing alleged. The Referee also noted that respondent had argued he should not receive the 2007 Admonition because of the same medical conditions he cites in this proceeding, but that the argument had been rejected.
In recommending disbarment, the Referee relied on the facts that the evidence showed that respondent's conversion of client funds was not the result of poor record-keeping, and that his failure to release settlement funds to the client who had to retain counsel to secure those funds was "totally unjustifiable." The Referee also focused on respondent's "long history" of not only neglecting client matters, but simply abandoning his clients by ceasing communications with them and failing to cooperate with substitute counsel, which in some instances required judicial intervention. The Referee also stated that there was no indication that respondent had any intention or desire to rehabilitate himself.
The AGC now requests that the Referee's report be confirmed in full, including the disbarment recommendation. Respondent opposes the AGC's motion and requests that this Court disaffirm the Referee's liability findings, with the exception of the charges related to inadequate bookkeeping and escrow withdrawals to non-named payees, to which he admits.
The Referee's liability findings are fully supported by the record and are confirmed in full. The pattern, timing, and amounts of respondent's withdrawals from his escrow account to his business account belie his contention that he mistakenly invaded client funds and that he is merely guilty of shoddy bookkeeping. Further, all that is required to establish the requisite venal intent for intentional conversion under rule 8.4(c) "is evidence that the attorney knowingly withdrew IOLA or escrow funds, without permission or authority, and that he used said funds for his own purposes" (Matter of Kirschenbaum, 29 AD3d 96, 100 [1st Dept 2006]; see also Matter of Katz, 109 AD3d 143, 146 [1st Dept 2013]. There is ample evidence of that in this record. Respondent has failed to provide sufficient factual support for his arguments that he was justified in refusing a client's demand to turn over settlement funds requested by her, and that his handling of other matters did not rise to the level of neglect.
The Referee's sanction recommendation is also confirmed. "Absent extremely unusual mitigating circumstances... [a]n attorney who misappropriates funds is presumptively unfit to practice law" (Matter of Lubell, 190 AD2d 479, 481 [1st Dept 1993][internal citations omitted]). This Court has consistently disbarred attorneys who have engaged in such misconduct (see e.g. Matter of Ballner, 140 AD3d 115 [1st Dept 2016]; Matter of Babalola, 139 AD3d 61 [1st Dept 2016]; Matter of Escalante, 127 AD3d 37 [1st Dept 2015]; Matter of Maruggi, 112 AD3d 180 [1st Dept 2013]; Matter of Schmell, 27 AD3d 24 [1st Dept 2006]).
Further, respondent's mitigation evidence is not sufficiently compelling to warrant a lesser sanction (compare Matter of Molinini-Rivera (24 AD3d 36 [1st Dept 2005] [five-year suspension for, inter alia, intentional conversion of client funds where "exceptional circumstances" included a series of abusive relationships that gave rise to diagnosed psychological condition causally related to misconduct]). Moreover, any such mitigation evidence is outweighed by the sheer magnitude of respondent's misconduct, especially his failure to promptly pay over settlement funds to which his client was entitled, resulting in her incurring $118,000 in legal fees to collect the funds, as well as the fact that he was previously admonished for misconduct.
Accordingly, the Committee's motion to confirm the Referee's findings of fact, conclusions of law and sanction recommendation should be granted, respondent's cross motion [*4]denied, and respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.
All concur.
Order filed. [January 14, 2020]
The Committee's motion to confirm the Referee's findings of fact, conclusions of law and sanction recommendation is granted, the respondent's cross motion is denied, and respondent is disbarred and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.