Matter of Etheridge (2024 NY Slip Op 04113)

Matter of Etheridge

2024 NY Slip Op 04113

Decided on August 01, 2024

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 01, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Anil C. Singh,J.P.,
Barbara R. Kapnick
Tanya R. Kennedy
Manuel J. Mendez
John R. Higgitt, JJ.

Motion No. 2024-01093 Case No. 2021-03135 

[*1]In the Matter of Derek Etheridge, A Suspended Attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Derek Etheridge (Admitted as Derek Ramon Etheridge) (OCA Atty. Reg. No. 4246401), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Derek Etheridge, was admitted, as Derek Ramon Etheridge, to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on June 28, 2004.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kevin P. Culley, of counsel), for petitioner.
Rene Myatt, Esq., for respondent.

Per Curiam 

Respondent Derek Etheridge was admitted to the practice of law in the State of New York by the First Judicial Department on June 28, 2004, under the name Derek Ramon Etheridge. At all times relevant to this proceeding, respondent maintained a registered business address within the First Judicial Department.
This matter arose out of respondent's undisputed misappropriation of client funds. Respondent's client, S.B., retained him in January 2019 to represent her in the sale of her co-op apartment. On January 18, 2019, the buyer provided respondent with two checks totaling $18,000 as a down payment for the co-op. Respondent then opened an escrow account and deposited the funds.
In June 2019, S.B. transferred $10,000 to respondent for the anticipated closing fees, which he also deposited into the escrow account. S.B., who was living in another state at that time, provided respondent with a power of attorney so that she would not have to attend the closing.
After the closing on October 2, 2019, respondent received and deposited $48,886.32 into the escrow account and wrote a check for $2,620 to the New York State Department of Taxation and Finance for the transfer tax that same day. Consequently, the balance of the account should have been $74,266.32; however, it was $63,331.32. In November 2019, respondent paid S.B. $25,000 from the escrow account, but informed her that he was withholding the balance of her funds while awaiting "official written communication" from the City of New York and the Internal Revenue Service that the liens and taxes related to the sale had been paid.
By June 2020, respondent had made numerous withdrawals from the escrow account totaling over $35,000, causing the balance to fall to $3.98.
S.B. later executed another power of attorney effective June 11, 2020, assigning her brother as the primary agent with no co-agents. By letter dated September 3, 2020, S.B. informed respondent that the new power of attorney superseded the one she had granted to him. That same month, long after the escrow account had been depleted, respondent informed S.B. by letter that he was legally obligated to withhold her funds to ensure that " 'federal and state transfer taxes' and 'capital gains taxes' were paid and [that he] required documentary proof . . . of same before he would release the balance of the funds."
In October 2020, respondent borrowed $48,886 from [*2]a friend, which enabled him to send S.B. a check for $14,645. Respondent again stated that he needed to retain a portion of the proceeds until "an estate tax settlement letter is provided attesting to the fact that all taxes related to the . . . sale had been reconciled"; that, as the holder of power of attorney at the time of the sale, he was "responsible for any federal and state tax liability"; and that the power of attorney S.B. granted to her brother "was of no import, as Power of Attorney's [sic] do not apply retroactively." Unbeknownst to respondent, however, S.B. had already filed a complaint against him with the Attorney Grievance Committee for the First Department (the Committee) via an email dated September 14, 2020.
Upon receiving the complaint, respondent contacted S.B. on January 5, 2021, and attempted to persuade her to withdraw her complaint by promising to give her the balance owed. On January 21, 2021, respondent issued S.B. a check and asked that she contact him to "discuss the terms under which the recently filed grievance may be withdrawn."
By notice dated August 25, 2021, the Committee moved to immediately suspend respondent from the practice of law in accordance with Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(2) and (5), which was granted by this Court on November 4, 2021 (Matter of Etheridge, 200 AD3d 52 [1st Dept 2021]). On March 6, 2022, the Committee filed a petition alleging that, in violation of Rules of Professional Conduct (22 NYCRR § 1200.0) rules 1.15 and 8.4, respondent converted more than $48,000 in client and third-party funds held in his attorney escrow account, commingled those funds with personal funds, failed to promptly deliver funds owed to his client as requested, made numerous and substantial cash withdrawals from the escrow account, failed to maintain required bookkeeping records, and gave false statements and testimony to his client.
By answer dated April 29, 2022, respondent effectively admitted to the charges against him. In an unpublished order entered August 26, 2022, this Court granted the Committee's petition to the extent of deeming the charges established based on respondent's admissions and appointing a Referee to conduct a hearing and file a report making findings of fact and conclusions of law and recommending disciplinary sanction as may be appropriate.
The Referee conducted a virtual hearing on May 5, 2023. Respondent admitted that he took $49,000 of S.B.'s money from his escrow account with the knowledge that he had a fiduciary responsibility to his client, and it was "wrong" to do so. He testified that several events in his life influenced his poor decision-making. Respondent stated that the death of his mother in 2017 affected every aspect of his life and led to the failure of his marriage. Respondent's wife requested that he leave their family home, and he did so in January 2019. He testified that he agreed to continue to pay for utilities at the home to ensure [*3]his children were cared for, despite having little money to support himself at that time. Respondent also testified that he contracted an upper respiratory infection in late 2019. He claimed that he was "one of the first people in New York City to be diagnosed with COVID" and missed a substantial amount of work because of his illness.
On November 12, 2023, the Referee filed a report recommending that respondent be disbarred. The Referee characterized respondent's testimony regarding his COVID diagnosis as "disingenuous" and noted that respondent failed to mention his illness and the death of his mother as mitigating factors during the Committee's May 7 and June 14, 2021, depositions. The Referee also found that, while respondent both admitted to and expressed remorse for his conduct, his remorse was "for his family and himself, and not what he did to [S.B.]." Further, respondent failed to produce adequate bookkeeping records in response to the Committee's request and exhibited conduct "akin with extortion" when he emailed S.B. requesting that she withdraw her complaint in exchange for receiving the full amount she was owed. The Referee also discredited respondent's testimony that he was "ignorant" as to how to properly open and maintain an IOLA account and noted that he continually lied to S.B. while withholding her proceeds from the apartment sale.
The Committee now moves to confirm the Referee's report and recommendation that respondent be disbarred pursuant to the Rules of the Appellate Division, First Department (22 NYCRR) § 603-8-a(t) and § 1240.8(b). Respondent opposes the motion and instead seeks a suspension nunc pro tunc to the date of his interim suspension, with leave to apply for reinstatement immediately, and a direction "to participate in additional coursework to educate him on his ethical responsibilities."
It is well settled that "[a]bsent extremely unusual mitigating circumstances an attorney who misappropriates funds is presumptively unfit to practice law" (Matter of Felicetti, 180 AD3d 176, 181-182 [1st Dept 2020] [internal ellipsis and brackets omitted], quoting Matter of Lubell, 190 AD2d 479, 481 [1st Dept 1993]). To establish the requisite venal intent for intentional conversion, "all that is required . . . is evidence that the attorney knowingly withdrew IOLA or escrow funds, without permission or authority, and that he used said funds for his own purposes" (Felicetti, 180 AD3d at 181 [internal quotation marks omitted]).
Here, respondent admits to his misconduct and acknowledges that he knew it was wrong to withdraw his client's money from the escrow account for his personal use. Even if we were to disagree with the Referee's report and credit respondent's claimed mitigating factors, "[t]he fact is that every person is confronted with stress arising out of the complications of daily life, and the existence of personal problems, absent an extraordinary situation not here apparent, does not explain, much less justify, stealing [*4]money from clients" (Matter of Gieger, 170 AD2d 134, 136 [1st Dept 1991], lv denied 79 NY2d 755 [1991]). Further, the First Department cases on which respondent relies are distinguishable from the instant matter insofar as they each involved an unintentional, nonvenal misappropriation of funds (see Matter of Spinnell, 185 AD3d 1, 3 [1st Dept 2020] [Referee found only that attorney "committed nonvenal misappropriation in violation of rule 1.15 (a)"], lv denied 36 NY3d 909 [2021]; Matter of Salo, 77 AD3d 30, 38 [1st Dept 2010] [in light of "uncontroverted expert evidence, . . . it [w]as not . . . proven by a preponderance of the evidence that respondent had the venal intent required for a finding that he willfully and knowingly converted third-party funds"]; Matter of Weingrad, 196 AD2d 300, 304 [1st Dept 1994] ["Although respondent commingled escrow money and converted clients' funds, he did so without venal intent"], lv denied 83 NY2d 756 [1994], cert denied 513 US 877 [1994]). To the extent that the other cases upon which respondent relies, Matter of Reul (211 AD3d 1309 [3d Dept 2022]) and Matter of McClenathan (128 AD3d 193 [4th Dept 2015]), may suggest a different outcome, we are not bound by the decisions of other departments (see e.g. Rojas v Romanoff, 186 AD3d 103, 115 [1st Dept 2020]).
Accordingly, the Committee's motion to confirm the Referee's report and recommendation should be granted and respondent disbarred from the practice of law retroactive to the date of his November 4, 2021 suspension, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York.
All concur.
Wherefore, it is Ordered that the motion of the Attorney Grievance Committee is granted, pursuant to 22 NYCRR 1240.9(a)(1) and (3), and respondent Derek Etheridge, admitted as Derek Ramon Etheridge, is disbarred from the practice of law in the State of New York, effective nunc pro tunc to November 4, 2021, the date of his suspension,
and until further order of this Court, and
It is further Ordered that, pursuant to Judiciary Law § 90, during the period of disbarment and until further order of this Court, respondent Derek Etheridge, admitted as Derek Ramon Etheridge, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that respondent Derek Etheridge, admitted as Derek Ramon Etheridge, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent Derek Etheridge, admitted as Derek Ramon Etheridge, has been issued a secure [*5]pass by the Office of Court Administration, it shall be returned to the issuing agency forthwith.
Entered: August 1, 2024